**DIEBOLD, INCORPORATED,**
**Plaintiff–Appellant,**

v.

**The UNITED STATES,**
**Defendant–Appellee.**

No. 89–1349.

United States Court of Appeals,
Federal Circuit.

Dec. 19, 1989.

**1580**

Lyman G. Friedman, Williams & Connolly, Washington, D.C., argued, for plaintiff-appellant. With him on the brief was Paul Mogin.

Charles Bricken, Tax Div., Dept. of Justice, Washington, D.C., argued, for defendant-appellee. With him on the brief were Shirley D. Petersen, Asst. Atty. Gen., Gary R. Allen and Jonathan S. Cohen.

Before BALDWIN and FRIEDMAN,* Senior Circuit Judges, and MAYER, Circuit Judge.

MAYER, Circuit Judge.

### OPINION

Diebold, Inc. appeals the judgment of the United States Claims Court, 16 Cl.Ct. 193

---

* Judge Friedman took senior status on November 1, 1989.

(1989), that, because Diebold changed its method of accounting without the Commissioner's prior consent as required by section 446(e) of the Internal Revenue Code of 1954, 26 U.S.C. § 446(e) (1982), it was not entitled to a refund of income taxes. We affirm.

## BACKGROUND

Neither party suggests that summary judgment was inappropriate. Therefore, we adopt the Claims Court's statement of undisputed facts and recount only those necessary to our discussion.

Diebold, an accrual basis taxpayer, manufactures and sells automated teller machines (ATMs). To facilitate on-site repair, it designed its ATMs in modular form: an ATM is composed of several modules, each of which performs a different function, such as reading magnetic cards, accepting deposits, dispensing cash, printing receipts and transmitting customer commands. Diebold maintains a pool of replacement modules so that when a customer's ATM needs repair, Diebold can rapidly restore it to service by replacing the malfunctioning module with a spare from its pool. The defective module is then repaired and put into the pool. Diebold maintains these replacement modules were never held for sale and were installed in its customers' ATMs under service contracts for which there was an annual fee, but no separate charge for the replacement modules.

In Diebold's original tax returns for 1976 and 1977, it claimed no investment tax credit or depreciation for the cost of manufacturing its set of replacement modules. Instead, they were considered nondepreciable inventory for which there was no deduction until they were removed from service. On March 31, 1980, however, Diebold wrote a letter to the Internal Revenue agent who was auditing its 1976 and 1977 returns, explaining that the replacement modules should be treated as depreciable property to clearly reflect taxable income,

and requesting that the agent take this change into account. Believing this to be an informal claim for a refund, the auditor requested that Diebold file amended returns to formalize the claim. Diebold complied and filed amended returns on October 3, 1980 for these tax years, claiming both a depreciation deduction and an investment tax credit for the replacement modules, giving rise to a refund. By letter dated April 18, 1983, the regional commissioner disallowed the claims for refund, and Diebold filed this suit in the Claims Court.

In granting summary judgment for the government, the Claims Court held that Diebold was not entitled to a refund because it did not secure the consent of the Commissioner before changing its method of accounting, as required by section 446(e) of the Internal Revenue Code and Treasury Regulation § 1.446–1(e). This judgment was based on the fact that Diebold had consistently accounted for the replacement modules as inventory during the tax years in question, and then sought, by way of amended returns, to treat them as depreciable assets without having filed the required Form 3115 to request the Commissioner's consent to the change.

## DISCUSSION

■ Diebold tells us it did not change its method of accounting within the meaning of section 446(e) of the Internal Revenue Code, but simply corrected an error in the application of a pre-existing method of accounting by filing amended tax returns for the years going back to the first year in which the mistake was made. But we believe the Claims Court was correct that Diebold's claim for refunds was based on an impermissible change in the method of accounting on the basis of which Diebold regularly computed its taxable income within the meaning of section 446(e) and Treasury Regulation § 1.446–1(e). The relevant texts of these provisions are set out in the margin.[1]

---

**1.** Section 446(e). *Requirement respecting change of accounting method.* Except as otherwise expressly provided in this chapter, a taxpayer who changes the method of accounting on the basis of which he regularly computes his income in keeping his books shall, before computing his taxable income under the new method, secure the consent of the Secretary.

The argument that Diebold sought merely to correct a "posting error" by shifting the rotatable pool of replacement modules from the inventory account to the pre-existing capital account is not persuasive. In contrast to the cases it relies on, *e.g., Gimbel Bros. v. United States*, 535 F.2d 14, 210 Ct.Cl. 17 (1976), *later proceeding*, 211 Ct.Cl. 383 (1976); and *Standard Oil Co. (Indiana) v. Commissioner*, 77 T.C. 349 (1981),[2] Diebold does not seek to account for the replacement modules in the same manner that it accounts for other similar items or to correct the omission of an item from a method of accounting that it otherwise consistently applies to a single category of related items. In *Gimbel Bros.*, the taxpayer sought to change from the accrual method to the installment method of reporting the income from its rotating charge accounts. The court found that these accounts had "substantially similar characteristics" to other charge accounts that the taxpayer already reported on the installment method. 535 F.2d at 15 n. 2, 22. In *Standard Oil Co.*, the court characterized the taxpayer's error simply as a "failure to report similar items consistently under a fixed method of accounting". 77 T.C. at 383.

Here, there is no assertion, nor can there be, that Diebold's replacement modules are similar to or in the same category as other items in the capital asset account. In fact, Diebold accounted for replacement modules as nondepreciable inventory in 1974 and 1975, years for which it claimed no refund. 16 Cl.Ct. at 195. Similarly, Diebold accounted for spare parts for its physical security equipment (another line of business) in its inventory account.

Diebold also relies on *Korn Industries, Inc. v. United States*, 532 F.2d 1352, 209 Ct.Cl. 559 (1976), in support of its "posting error" argument, but this case is also different from ours. There, the taxpayer mistakenly omitted three materials costs from the calculation of the cost of finished goods in inventory. These three elements of cost were included, however, in the raw materials inventory, the work-in-progress inventory and the supplies inventory. Therefore, it was obvious that the taxpayer had established the omitted items as materials costs and that it had merely made a posting error when it left them out of the calculation of the cost of finished goods in inventory. In contrast, Diebold has established the inventory method of accounting for the replacement modules and seeks to change to a different method by treating the modules as depreciable assets rather than as inventory. The argument that it seeks to

Treas.Reg. § 1446–1. General rule for methods of accounting.

(e) *Requirement respecting the adoption or change of accounting method.* (1) A taxpayer filing his first return may adopt any permissible method of accounting in computing taxable income for the taxable year covered by such return....

(2)(i) Except as otherwise expressly provided in chapter 1 of the Code and the regulations thereunder, a taxpayer who changes the method of accounting employed in keeping his books shall, before computing his income upon such new method for purposes of taxation, secure the consent of the Commissioner. Consent must be secured whether or not such method is proper or is permitted under the Internal Revenue Code or the regulations thereunder.

(ii)(a) A change in the method of accounting includes a change in the overall plan of accounting for gross income or deductions or a change in the treatment of any material item used in such overall plan. Although a method of accounting may exist under this definition without the necessity of a pattern of consistent treatment of an item, in most instances a method of accounting is not established for an item without such consistent treatment. A material item is any item which involves the proper time for the inclusion of the item in income or the taking of a deduction. Changes in method of accounting include a change from cash receipts and disbursement method to an accrual method, or vice versa, a change involving the method or basis used in the valuation of inventories....

(3)(i) Except as otherwise provided under the authority of subdivision (ii) of this subparagraph, in order to secure the Commissioner's consent to a change of a taxpayer's method of accounting, the taxpayer must file an application on Form 3115 with the Commissioner of Internal Revenue, Washington, D.C. 20224, within 180 days after the beginning of the taxable year in which it is desired to make the change.

**2.** *Beacon Publishing Co. v. Commissioner*, 218 F.2d 697 (10th Cir.1955), also relied upon by Diebold, was decided under section 41 of the 1939 Code, which is significantly different from its successor, section 446(e) of the 1954 Code, and is distinguishable. *See* 16 Cl.Ct. at 201.

correct a substantive error independent of its choice of accounting procedures is simply wrong.

It is not clear that Diebold's original tax treatment of its replacement modules was improper. However, even if it were correcting an erroneous characterization of the replacement modules, the correction would still be considered a change in the method of accounting. Treas.Reg. § 1.446–1(e)(2)(i); *see Witte v. Commissioner*, 513 F.2d 391, 394 (D.C.Cir.1975); see also cases cited by the Claims Court, 16 Cl.Ct. at 201. Therefore, Diebold's argument that the replacement modules were not held for sale and consequently could not properly be treated as inventory under any accounting method is irrelevant.

The Claims Court was correct that the change from inventory to depreciation treatment of the replacement modules was "a change in the treatment of [a] material item" because it "involves the proper time for the inclusion of the item in income or the taking of a deduction". Treas.Reg. § 1.446–1(e)(2)(ii)(a). Diebold's counter that it did not and could not have taken a deduction for the cost of inventory and therefore that the change does not involve the timing of a deduction does not wash.

First of all, there is no question that a change from treating the replacement modules as nondepreciable inventory, where there is no deduction until the modules are removed from service, to treating them as capital assets, where there is a depreciation deduction in each year of useful life, raises the question of the taxable year in which income is reduced by the cost or a portion of the cost of manufacturing the replacement modules, that is, a question of timing. Besides that, the definition of "a material item" is not limited to the technical meaning of a "deduction", excluding a change in the timing of items, such as the cost of goods sold, that enter into the calculation of gross income. The definition, which also includes "item[s] in income", is broad enough to comprehend the timing of subtractions from gross receipts, especially where the new method of accounting unquestionably involves a deduc-

tion in its technical sense. *See, e.g., Hooker Indus., Inc. v. Commissioner*, 44 T.C.M. (CCH) 258, 267 (1982) (section 446(e) applies to a change from deducting the cost of supplies when used to expensing the items when purchased). So narrow a construction of the term "material item" would shift the focus of the definition from the timing of the inclusion or exclusion of items in or from income to the technical nature of the inclusions or exclusions themselves.

Diebold was required to obtain the Commissioner's consent even though it sought to amend its tax returns back to 1976, which Diebold asserts is the first year in which it maintained a pool of replacement modules for installation in customers' ATMs under its full service contracts. *See Southern Pacific Transp. Co. v. Commissioner*, 75 T.C. 497, 682 (1980) ("... consent is required when a taxpayer ... retroactively attempts to alter the manner in which he accounted for an item on his tax return"). Section 446(e) prohibits taxpayers from unilaterally amending their tax returns simply because they have discovered that a different method of accounting yields a lower tax liability than the method they originally chose.

It is for the Commissioner to determine whether a change in a taxpayer's method of accounting results in the omission of items from income or in the doubling or "bunching" of deductions or exclusions and to make compensating adjustments. Even if the chosen method of accounting caused a mismatching of income and deductions, Diebold could not change it without first obtaining the Commissioner's consent. It was Diebold's duty to bring a request to the Commissioner's attention by filing Form 3115 so he could determine whether the change would result in a distortion of income.

Finally, Diebold here claims that, even if it was required to file Form 3115 to obtain the Commissioner's consent, he waived the requirement by considering the merits of the change Diebold wished to make after being fully apprised of its request. In the

Claims Court, Diebold said the Commissioner actually consented to a change of accounting method, but it did not clearly raise the waiver argument. At best, it was only indirectly alluded to in the middle of oral argument on a different issue. We will not decide an issue that was not squarely presented to the trial court. "We can hardly hold ... that the [trial] court did or did not err in resolving issues it did not resolve and those it had no opportunity to resolve." *Black & Decker, Inc. v. Hoover Serv. Center,* 886 F.2d 1285, 1289, 12 USPQ2d 1250, 1254 (Fed.Cir.1989). We think the proposition dubious in any event because, although the technical requirement of filing Form 3115 might be waived, under section 446(e) consent of the Commissioner must be secured before changing a method of accounting. "[E]xplicit statutory requirements ... are beyond the dispensing power of Treasury officials." *Angelus Milling Co. v. Commissioner,* 325 U.S. 293, 296, 65 S.Ct. 1162, 1164, 89 L.Ed. 1619 (1944).

## CONCLUSION

Accordingly, the judgment is affirmed.

AFFIRMED.