**PICCADILLY CAFETERIAS,
INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 94–432T.

United States Court of Federal Claims.

Aug. 19, 1996.

Robert D. McDonald, Alexandria, Virginia, for plaintiff.

Jennifer Dover Spriggs, Washington, D.C., for defendant, with whom were Assistant Attorney General Loretta C. Argrett, Mildred L. Seidman, and Steven I. Frahm.

## ORDER

MOODY R. TIDWELL, III, Judge:

This case is before the court on the parties' cross motions for partial summary judgment pursuant to RCFC 56. At issue is whether plaintiff, Piccadilly Cafeterias, Inc., is entitled to a refund of taxes based on section 467 of the Internal Revenue Code ("code"), for an overpayment of taxes because of the Internal Revenue Service's disallowance of certain rental expense deductions. The court heard oral argument on July 15, 1996. This is a case of first impression in that no other court has interpreted this statute. For the reasons set forth below, the court finds that plaintiff is not entitled to a refund. Accordingly, the court grants defendant's motion and denies plaintiff's cross motion.

## UNCONTROVERTED FACTS

Both parties stipulate to the following material facts about the method used by plaintiff to calculate the rental deduction on its amended tax return for 1987.[1] Plaintiff has 25 long-term leases for the use of tangible property. Each of these leases has a term of approximately 20 years; each provides that plaintiff will pay certain fixed amounts of monthly rent during the term of the lease; and each provides for aggregate payments of fixed rent during the term of the lease in excess of $250,000. Plaintiff's leases also provide that the amount of fixed rent to be paid will increase at specified intervals dur-

---

1. This case is in partial suspension for the tax year ending June 30, 1988, pending the resolution of this motion. Because the facts are uncontroverted in this case, the court borrows liberally from the joint stipulation of facts.

ing the term of the lease, and they establish exactly how much fixed rent is payable during each month according to an escalating schedule. Because the leases provide for escalating fixed rents, in the early years of the leases the average annual amount is greater than the amount of fixed rent actually paid under the leases for those early years. Correspondingly, in the later years of the leases the average annual amount is less than the amount of fixed rent actually paid under the leases for those later years. Each of the leases at issue in this case is a "section 467 rental agreement," as defined by 26 U.S.C. § 467(d) (1994).[2]

On plaintiff's original tax returns for 1985, 1986 and 1987, plaintiff did not claim the additional rental deduction at issue in this case. From 1986 through 1988, plaintiff's books and financial statements reflect plaintiff's expense for fixed rent in an amount equal to the amount of fixed rent actually paid during each year. Correspondingly, plaintiff's original tax returns for 1985, 1986 and 1987 reflect a deduction for fixed rent equal to the amount of fixed rent paid under the leases during those years. However, plaintiff filed an amended tax return for 1987 changing its computation of the deduction for its escalating fixed rents and claiming an additional rental deduction computed on a straight-line basis. Plaintiff did not file Form 3115, an "application for change in accounting method," or otherwise request the Commissioner's consent for a change in its accounting method as required by 26 U.S.C. § 446(e) (1994).

## DISCUSSION

### I. Summary Judgment

■ Summary judgment is appropriate only when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. RCFC 56(c). In evaluating a motion for summary judgment, any doubt as to whether a genuine issue of material fact exists must be resolved in favor of the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90

S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970); *Campbell v. United States*, 2 Cl.Ct. 247, 249 (1983). A genuine issue of material fact is one that would change the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, the court does not "weigh the evidence and determine the truth of the matter but [only] determine[s] whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2511. When the moving party has carried its burden, the non-moving party must come forward with specific facts showing that a genuine issue for trial exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The non-moving party may not discharge its burden by cryptic, conclusory, or generalized responses. *See Willetts v. Ford Motor Co.*, 583 F.2d 852, 856 (6th Cir.1978); *Tunnell v. Wiley*, 514 F.2d 971, 976 (3d Cir.1975).

■ When the parties have filed cross motions for summary judgment, as in this case, the court must evaluate each party's motion on its own merits. The court's duty to decide whether summary judgment is appropriate is not abrogated by the fact that both parties argue in favor of summary judgment and allege that there are no genuine issues of material fact for trial. *Prineville Sawmill Co. v. United States*, 859 F.2d 905, 911 (Fed.Cir.1988) (citing *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed.Cir.1987)); *see also Bataco Indus., Inc. v. United States*, 29 Fed.Cl. 318, 322 (1993), *aff'd*, 31 F.3d 1176 (Fed.Cir.1994). Cross motions are simply a claim by each party that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not establish that if one is rejected the other must necessarily be allowed. *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir.1968); *Bataco*, 29 Fed. Cl. at 322.

### II. Rent Payment Schedules as Allocations

■ The primary issue is whether under 26 U.S.C. § 467(b) an escalating rent pay-

---

**2.** Lease No. 1 does not actually qualify as a section 467 rental agreement because it was entered into before the effective date of the statute.

The parties agreed to this fact during oral argument. Trans. at 2–3.

ment schedule in a lease agreement constitutes an "allocation" provision, or whether plaintiff may or must calculate its rental deduction on a straight-line basis per section 467(b)(2). Section 467(b) provides in pertinent part:

> (1) **Allocation follows agreement.**—Except as provided in paragraph (2), the determination of the amount of the rent under any section 467 rental agreement which accrues during any taxable year shall be made—
>
>> (A) by allocating rents in accordance with the agreement. . . .
>
> . . . . .
>
> (2) **Constant rental accrual in case of certain tax avoidance transactions, etc.**—In the case of any section 467 rental agreement to which this paragraph applies, the portion of the rent which accrues during any taxable year shall be that portion of the constant rental amount with respect to such agreement which is allocable to such taxable year.
>
> (3) **Agreements to which paragraph (2) applies.**—Paragraph (2) applies to any rental payment agreement if—
>
> . . . . .
>
>> (B) such agreement does not provide for the allocation referred to in paragraph (1)(A).

26 U.S.C. § 467(b). This is a case of first impression. There is no applicable case law construing this statute, and the Department of Treasury has issued no regulations as mandated in the statute, even though the statute expressly and repeatedly directs the Secretary of Treasury to promulgate regulations for guidance in the application of this statute.[3] 26 U.S.C. § 467(b)(5), (c)(5), (e)(6), (f), (g), (h). Although the IRS has issued two Coordinated Issue Papers[4] and two Private Letter Rulings[5] on this question in recent

years, they have no precedential value and are not binding on the court. 26 U.S.C. § 6110(j)(3) (1994); *Snap–On Tools, Inc. v. United States*, 26 Cl.Ct. 1045, 1060 (1992), *aff'd*, 26 F.3d 137 (Fed.Cir.1994) (stating that Private Letter Rulings are not binding authority, though they may give evidence of the Commissioner's administrative practice on a particular issue).

The first step in statutory interpretation is to examine the plain language of the statute. *United States v. Ron Pair Enters.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). If the plain language is ambiguous, the court may then look to the legislative history for guidance. *See West Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 100–01, 111 S.Ct. 1138, 1147–48, 113 L.Ed.2d 68 (1991); *In re Abbott Labs.*, 51 F.3d 524, 528 (5th Cir.1995).

The heart of the debate in this case is the meaning of the word "allocation" in the statute. An "allocation" is an "assignment or allotment." BLACKS LAW DICTIONARY 75 (6th ed. 1990). "In taxation . . . specific items of income, expense, gain, loss and credit can be allocated. . . ." *Id.* In this case the assignment or allotment is of rent payments to various years. The issue before the court is whether the leases in question contain terms that may reasonably be construed as an "allocation" under the statute.

Plaintiff's leases stipulated monthly rent payments pursuant to escalating annual rent payment schedules such as the following:

| | |
|---|---|
| Lease Years 1–5 | $59,000 per year |
| Lease Years 6–10 | $71,000 per year |
| Lease Years 11–15 | $85,000 per year |
| Lease Years 16–20 | $102,000 per year |

Jt. Ex. 2 at 3. Plaintiff argues that such rent payment schedules, standing alone, cannot constitute agreements as to the "allocation" of rents under section 467, because this

---

**3.** Proposed regulations were recently published in the Federal Register, but have not taken effect and are not binding on the court, especially since this case concerns tax year 1987. 61 Fed.Reg. 27834 (June 3, 1996).

**4.** IRS Coord. Issue Paper F95–341–003 (Dec. 7, 1995); IRS Coord. Issue Paper F94–075–005 (March 16, 1994).

**5.** Priv.Ltr.Rul. 9406003 (Feb. 11, 1994); Priv. Ltr.Rul. 9352002 (Dec. 30, 1993). The 1993 ruling is very similar to the present case, finding that the rent payment schedules in 20 year escalating rent leases where monthly rent was specified as one twelfth of the annual rental were allocations for the purposes of section 467. Priv. Ltr.Rul. 9352002, at 1.

would render section 467(b)(3)(B) meaningless. Section 467(b)(3)(B) refers to situations in which the lease agreement "does not provide for the allocation referred to in paragraph (1)(A)." All leases, plaintiff argues, have some sort of rent payment schedule, and by referring to situations where an agreement does not provide for the "allocation" of rents, the statute necessarily implies that a rent payment schedule is not the same thing as an "allocation" provision. Thus, according to plaintiff's arguments, its leases do not contain "allocation" provisions, and therefore the constant rent accrual method of section 467(b)(2) must be followed.[6] Defendant counters that the rent payment schedules in plaintiff's leases constitute an "allocation" as anticipated by the statute, and therefore section 467(b)(2) does not apply. Under defendant's theory of the case, in calculating its deduction plaintiff may not use a straight-line method, but may only deduct rent actually paid.

■ Section 467 specifies that to determine the amount of rent which accrues during a taxable year, the tenant must do so "by allocating rents in accordance with the agreement." 26 U.S.C. § 467(b)(1)(A). This general statement provides little guidance to taxpayers or courts. It does not say "in accordance with the *allocation provision* of the agreement," or words to that effect, but merely states "in accordance with the agreement," meaning the agreement as a whole. Where annual rents are specified in a lease, this court finds it entirely reasonable that a rent payment schedule could act as an "allocation," i.e., apportioning or allotting a specific amount of rent to each particular year. The rent payment schedules in this case actually specify rent for each year of the lease, and further define monthly rent as one twelfth of the annual rental amount. The

court finds this adequate to constitute an "allocation" of that rent to a given year.

■ As plaintiff correctly points out, the statute also anticipates cases in which there is no "allocation" provision, and the above finding does not negate this. A rent payment schedule alone might not reasonably be construed as an "allocation" provision in all circumstances. For example, where rent is to be paid in a lump sum at the beginning or end of a multi-year lease period, it cannot reasonably be said that such a schedule of rent payment alone adequately allots or assigns the rent payments to specific years over the period of the lease. Plaintiff is only partially correct in the proposition that all leases have some sort of rent payment schedule.[7] Contrary to plaintiff's argument, however, by referring to situations where an agreement does not provide for the "allocation" of rents, the statute merely implies that a rent payment schedule does not necessarily operate as an "allocation" in all cases.

Plaintiff and defendant both cite to the legislative history in support of their contrary interpretations of the statutory language. Unfortunately, the legislative history provides little guidance on the issue in question here. The House Conference Report indicates simply that "[t]he rent allocable to a taxable year will be determined from the terms of the lease," and that "level rents will be imputed if a section 467 rental agreement is silent as to the allocation of rents over the lease period." H.R. Conf.Rep. No. 98–861, 98th Cong., 2d Sess. 892 (1984), *reprinted in* 1984 U.S.C.C.A.N. 1445, 1580. Unfortunately, the House Report does not define the term "allocation," and hence does not solve the ambiguity here.

The legislative history does however provide some support for the court's finding.

---

**6.** The court notes that the term "constant rental amount" used in section 467(b)(2) is specifically defined in the statute. "The term 'constant rental amount' means, with respect to any section 467 rental agreement, the amount which, if paid as of the close of each lease period under the agreement, would result in an aggregate present value equal to the present value of the aggregate payments required under the agreement." 26 U.S.C. § 467(e)(1). Plaintiff has failed to demonstrate that its straight-line rent payments were

based on present value. Thus plaintiff has not complied with section 467(b)(2).

**7.** It is possible for a perfectly valid lease to not have a rent payment schedule. In all leases for a term greater than one year, the Statute of Frauds requires a writing which states the *amount* of rent to be paid. RESTATEMENT (SECOND) OF PROPERTY §§ 2.1, 2.2 (1977), not *when* that rent is to be paid.

One of the primary purposes of this statute was to prevent the effect of giving an interest-free loan to taxpayers by allowing them to delay the payment of taxes. H.R.Rep. No. 98–432, Part II, 98th Cong., 2d Sess. 1246 (1984), *reprinted in* 1984 U.S.C.C.A.N. 697, 909; *see also* IRS Coord. Issue Paper F95–341–003 at 1. This sort of practice was occurring in situations where, as here, tenants under escalating rent leases reported and deducted rental expenses on a constant straight-line basis, while the cash basis landlords reported income, and paid taxes, based on rents actually received. Thus, toward the beginning of the lease term the income reported by the landlord was less than the deduction taken by the tenant, and the tenant effectively received an interest-free loan equal to the difference. H.R.Rep. No. 98–432 at 1242–44, *reprinted in* 1984 U.S.C.C.A.N. at 905–07. If plaintiff were allowed to deduct an amount greater than that actually paid as rent, it would effectively constitute an interest-free loan. The court's interpretation of the statutory language, considering the rent payment schedules at issue in this case as "allocations," is consistent with the legislative intent to prevent a windfall interest-free loan to taxpayers. It prevents the mismatching between a landlord and tenant of reported income and deductions.

Accordingly, a rent payment schedule may be considered an "allocation" for the purposes of section 467(b). The plain language of the statute allows this interpretation, and the legislative history generally supports it. The court does not find that a rent payment schedule will qualify as an "allocation" in all circumstances, however, the rent payment schedules in this case are clearly allocating rent according to the statutory language.

## III. Consent Requirement

█ A secondary issue in this case is whether plaintiff was required to obtain the consent of the Commissioner before changing the method of computing its rental deduction. Plaintiff argues that because it changed its accounting method pursuant to section 467, no consent was required. The court addresses this issue in order to emphasize that plain-

tiff's erroneous adoption of the straight-line method might have been avoided, had plaintiff requested the consent of the Commissioner as required by 26 U.S.C. § 446(e).

█ When filing its first tax return, a taxpayer may adopt any proper or permitted method of accounting for computing its income and deductions. 26 U.S.C. § 446(c); Treas.Reg. § 1.446–1(e)(1) (as amended in 1995).[8] However, when filing tax returns for subsequent years, any change in accounting method requires prior consent of the Commissioner. 26 U.S.C. § 446(e); Treas.Reg. § 1.446–1(e)(1). Section 446(e) provides:

> Except as otherwise expressly provided in this chapter, a taxpayer [that] changes the method of accounting on the basis of which [it] computes [its] income in keeping [its] books shall, before computing [its] taxable income under the new method, secure the consent of the [Commissioner].

26 U.S.C. § 446(e). The purpose of the consent requirement is to prevent distortions of taxable income by requiring consistency in the method of accounting for income and deductions from year to year. *See Pacific Nat'l Co. v. Welch*, 304 U.S. 191, 194, 58 S.Ct. 857, 858–59, 82 L.Ed. 1282 (1938); *Diebold, Inc. v. United States*, 891 F.2d 1579, 1583 (Fed.Cir.1989), *cert. denied*, 498 U.S. 823, 111 S.Ct. 73, 112 L.Ed.2d 47 (1990); *Hackensack Water Co. v. United States*, 173 Ct.Cl. 606, 613, 352 F.2d 807 (1965). The Commissioner has broad discretion in determining when changes in accounting method can be made. *United States v. Catto*, 384 U.S. 102, 114, 86 S.Ct. 1311, 1317–18, 16 L.Ed.2d 398 (1966); *Brown v. Helvering*, 291 U.S. 193, 203, 54 S.Ct. 356, 360–61, 78 L.Ed. 725 (1934).

█ Treasury Regulations promulgated pursuant to the statutory consent requirement clearly define the parameters of the statute. Treas.Reg. § 1.446–1(e). Changes in accounting method include both changes in the "overall plan of accounting" for gross income or deductions, as well as changes in the treatment of a "material item" used in such an overall plan. Treas.Reg. § 1.446–1(e)(2)(ii)(a). For example, a change in the "overall plan of accounting" includes chang-

---

8. Treas.Reg. § 1.446–1(e) has not changed significantly since 1987.

ing from a cash receipts and disbursements method to an accrual method. *Id.* A "material item" affects timing; it is one that "involves the proper time for the inclusion of the item in income or the taking of a deduction." *Id.* The consent requirement is enforced by the courts when a taxpayer changes its treatment of a material item.[9] *Diebold,* 891 F.2d at 1583; *Travelers Ins. Co. v. United States,* 28 Fed.Cl. 602, 614 (1993).

When Congress amended the code in 1984, it specified treatment for the deduction of rental expenses under long-term leases, a "material item" at issue in this case. 26 U.S.C. § 467. Plaintiff did not accrue its rental deduction according to this treatment when filing its initial tax returns for 1985, 1986 and 1987, but instead claimed a deduction for fixed rent equal to the amount of fixed rent paid under the leases during those tax years. Subsequently, plaintiff filed an amended tax return for 1987, to accrue rent under a straight-line method in which the total amount of rent payable under the lease was divided by the period covered. Plaintiff's change to the straight-line method of computing its rental deduction affected the timing of its deduction in precisely the manner that defines a "material item" under the Treasury Regulations. Treas.Reg. § 1.446–1(e)(2)(ii)(a). Plaintiff's change of treatment for this material item required prior consent of the Commissioner.

Plaintiff neither requested nor received the Commissioner's consent for its change in accounting method by filing Form 3115. Plaintiff does not deny that it changed its treatment of a material item; rather, plaintiff argues that because the straight-line method was prescribed by section 467(b)(2), no consent was necessary. While the Treasury Regulations require consent regardless of whether the subsequent method is proper or permitted, Treas.Reg. § 1.446–1(e)(2)(i), plaintiff seeks to distinguish its change as not only proper and permitted, but statutorily prescribed. As discussed above, the court is not persuaded that the statute prescribed a straight-line method of computing plaintiff's

rental deduction. Indeed, the court finds that plaintiff's change to the straight-line method was erroneous. However, even if plaintiff were correcting an erroneous treatment of a material item, the correction would still be considered a change in its accounting method subject to the consent requirement. *Diebold,* 891 F.2d at 1583.

 Courts are particularly vigilant in enforcing the consent requirement when a taxpayer changes its accounting method retroactively, as plaintiff did on its amended tax return for 1987. *Pacific Nat'l,* 304 U.S. at 194, 58 S.Ct. at 858–59; *Diebold,* 891 F.2d at 1583. A taxpayer does not have a right to change its accounting method retroactively. *Pacific Nat'l,* 304 U.S. at 194, 58 S.Ct. at 858–59 ("there is nothing to suggest that Congress intended to permit a taxpayer, after expiration of the time within which [a] return is to be made, to have [its] tax liability computed and settled according to [an]other method"); *Diebold,* 891 F.2d at 1583 (a taxpayer is prohibited from amending its tax returns "simply because [it has] discovered that a different method of accounting yields a lower tax liability than the method [it] originally chose"). Because of the risk of distortion in these situations, "it is for the Commissioner to determine whether a change in accounting method results in the omission of items from income or the doubling or bunching of deductions or exclusions and to make compensating adjustments," under the code. *Diebold,* 891 F.2d at 1583; *see* 26 U.S.C. § 481 (1994). Thus, even if plaintiff were correcting an erroneous accounting method, its retroactive change to the straight-line method of computing its rental deduction still required the consent of the Commissioner.

Because plaintiff changed its accounting method by changing its treatment of a material item in its amended return for 1987, prior consent of the Commissioner was required. Accordingly, the IRS was well within its broad discretionary authority in deny-

---

**9.** "In order to secure the Commissioner's consent to a change of a taxpayer's method of accounting, the taxpayer must file an application on Form 3115 ... within 180 days after the beginning of the taxable year in which it is desired to make the change." Treas.Reg. § 1.446–1(e)(3)(i).

ing plaintiff the benefit of the resultant lower tax liability.

## CONCLUSION

Based on the foregoing discussion, defendant's motion for partial summary judgment is allowed and plaintiff's cross motion is denied. There being no just reason for delay, the Clerk shall dismiss this case with respect to the tax year ending 1987. At oral argument the parties represented to the court that the dispute over tax year ending 1988, which is in suspension, would be resolved by the court's ruling on this motion. Therefore, the parties have 45 days from the date of this order to take the appropriate steps with respect to tax year 1988 so that final judgment in this case can be entered. No costs.

**IT IS SO ORDERED.**