GARGOYLES, INC. and Pro–Tec, Inc., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 342–88C.

United States Court of Federal Claims.

Oct. 15, 1999.

Paul T. Meiklejohn, Seed and Berry, Seattle, Washington, for plaintiffs.

Gary L. Hausken, Civil Division, United States Department of Justice, Washington, D.C., with whom on the brief were Frank W. Hunger, Assistant Attorney General, and Vito J. DiPietro, Director, for defendant.

## OPINION

MARGOLIS, Senior Judge.

This patent action is before the Court on several issues: (1) plaintiffs' and defendant's respective supplemental briefs regarding whether the recently amended statute, 28 U.S.C. § 1498, ("Section 1498"), applies to plaintiffs' claim for attorneys' fees resulting from its long-standing patent infringement litigation; (2) defendant's motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction; and, assuming the Court grants plaintiffs' motion with regard to the applicability of Section 1498 and denies defendant's motion to dismiss, (3) plaintiff's application for an award of fees and expenses pursuant to Section 1498.

Defendant contends that Section 1498 does not apply to plaintiffs' suit on the grounds that plaintiffs' case was not pending on the date of enactment of the amendment to Section 1498, a contention that plaintiffs dispute. Defendant further contends that if Section 1498 applies to plaintiffs' case, this court lacks jurisdiction to entertain plaintiffs' claim for attorneys' fees, as judgment has been rendered in, and payment has been made on, the underlying case. Plaintiffs again disagree. In the alternative, defendant contends that because its position during this patent case was substantially justified, plaintiffs are not entitled to an award of fees and expenses. Plaintiffs maintain that defendant's position was not substantially justified.

After a careful review of the parties' written and oral arguments, the statute at issue, the legislative history of the 1996 amendment to Section 1498, as well as the record of the case, the Court finds defendant's first two contentions unpersuasive; plaintiffs' case was pending on the date of enactment of amended Section 1498, and thus Section 1498 is applicable to plaintiffs' case. Furthermore, in the absence of articulated guidelines for the timing of applications for attorneys' fees

under the amended statute, the Court finds that such applications must be made within a reasonable time after all appeals have been exhausted. Accordingly, defendant's motion to dismiss is denied. However, the Court finds that defendant's position throughout the case was substantially justified. Accordingly, plaintiffs are not entitled to an award of fees and expenses, and their application is denied.

## FACTS

This suit has been before the Court for many years and has generated numerous opinions by this Court and the United States Court of Appeals for the Federal Circuit. The relevant facts are set forth in these earlier opinions[1] and are summarized and supplemented here only as necessary to address the issues presently before the Court.

The United States Patent Office issued to plaintiff Pro–Tec, Inc. the two patents at issue in this case. The patents, which were subsequently assigned to plaintiff Gargoyles, Inc., disclose eyeglasses that plaintiffs believed were suitable for use by military personal during both on- and off-duty activities, including combat situations. Plaintiffs' complaint was filed under 28 U.S.C. § 1498, a statute that both waives sovereign immunity in cases where patent infringement occurs and sets out what remedy shall lie as a result, and alleged that the United States Army violated plaintiffs' patents when it procured ballistic/laser protective eyeglasses from another manufacturer, American Optical ("AO").

In the first of several decisions, this Court held that the government did not infringe plaintiffs' design or utility patents. *Gargoyles I v. United States*, 26 Cl.Ct. 1367 (1992). Plaintiffs appealed to the Federal Circuit, which affirmed this Court's conclusion that the design patent had not been infringed and that there had been no literal infringement with respect to two of the three claims of the utility patent. *Gargoyles II v. United States*, 6 F.3d 787 (Fed.Cir.1993).

The Federal Circuit, however, remanded for reconsideration of the literal infringement issue on one claim of the utility patent and for an examination of the doctrine of equivalents on all three claims of that patent. *Id.*

On remand, this Court held that for the three claims of the utility patent, the government literally infringed one claim, infringed another claim under the doctrine of equivalents, and did not infringe the third claim at all. *Gargoyles III v. United States*, 32 Fed. Cl. 157 (1994). Defendant appealed the Court's rejection of its best mode defense, and the Federal Circuit affirmed the Court's decision. *Gargoyles V v. United States*, 113 F.3d 1572, 1573 (Fed.Cir.1997). After a trial on damages, this Court awarded plaintiffs a reasonable royalty rate, but declined to award lost profits. *Gargoyles IV v. United States*, 37 Fed.Cl. 95 (1997). The Federal Circuit affirmed the damage award, rejecting both the government's contention that the royalty rate awarded was unreasonable and plaintiffs' request for an award of lost profits. *Gargoyles V*, 113 F.3d at 1573.

Under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, plaintiffs sought an award of their fees and expenses incurred over the course of this litigation. Plaintiffs claim to have incurred $867,359.23 in fees, including $100,043 in expert witness fees and expenses, and $91,493.68 in recoverable costs. Plaintiffs' motion, filed October 27, 1997, also included a short discussion of newly amended 28 U.S.C. § 1498, arguing that Section 1498 had some bearing on plaintiffs' application for attorneys' fees. On February 18, 1998, a hearing was held on plaintiffs' application for EAJA fees. At that hearing, plaintiffs conceded that although the issue was not adequately briefed by either plaintiffs or defendant, Section 1498, rather than EAJA, governed their application for fees. The Court requested simultaneous supplemental briefs regarding the applicability of Section 1498, which were filed on March 31, 1998. The government also filed on that

---

1. *See Gargoyles v. United States*, 26 Cl.Ct. 1367 (1992) (*"Gargoyles I"*); *Gargoyles v. United States*, 6 F.3d 787 (Fed.Cir.1993) (table) (*"Gargoyles II"*); *Gargoyles v. United States*, 32 Fed.

Cl. 157 (1994) (*"Gargoyles III"*); *Gargoyles v. United States*, 37 Fed.Cl. 95 (1997) (*"Gargoyles IV"*); *Gargoyles v. United States*, 113 F.3d 1572 (Fed.Cir.1997) (*"Gargoyles V"*).

same date a motion to dismiss for lack of subject matter jurisdiction.

## DISCUSSION

### I. APPLICABILITY OF 28 U.S.C. § 1498

■ In order to determine whether Section 1498 applies to plaintiffs' claims, it is important to understand the chronology of events leading up to this decision. Thus, a concise chart of pertinent dates and events is shown below.

| | |
|---|---|
| June 9, 1988 | Plaintiffs filed case, asserting attorneys' fees as sought-for remedy |
| February 22, 1996 | Court issued judgment on the merits, awarding costs to plaintiffs; redacted version filed January 2, 1997 at 37 Fed.Cl. 95 |
| October 19, 1996 | 1996 Amendment to Section 1498 became effective |
| May 20, 1997 | Court's February 22, 1996 decision was affirmed |
| June 18, 1997 | Plaintiffs filed application for EAJA fees |
| June 25, 1997 | Rehearing was denied by Federal Circuit |
| July 2, 1997 | Defendant opposed EAJA application on grounds that case was not yet final when application was made |
| September 23, 1997 | Case became final, as appeal time to Supreme Court expired |
| October 27, 1997 | Plaintiffs filed Motion for Award of Fees (under EAJA) |
| November 11, 1997 | Plaintiffs requested that government pay underlying judgment |
| December 23, 1997 | Government requested that Treasury pay judgment |
| January 3, 1998 | Treasury issued checks |
| January 22, 1998 | Checks were sent to Gargoyles and Pro–Tec |

In October of 1996, Section 1498 was amended to add the following language:

> Reasonable and entire compensation shall include the owner's reasonable costs, including reasonable fees for expert witnesses and attorneys, in pursuing the action . . . . Notwithstanding the preceding sentences, unless the action has been pending for more than 10 years from the time of filing to the time that the owner applies for such costs and fees, reasonable and entire compensation shall not include such costs and fees if the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

2. Plaintiffs concede that their case had been pending only nine years and three months on the date of their application. Thus, they do not qualify for the automatic award of attorneys' fees

28 U.S.C. § 1498.[2] Congress's stated intent in amending the statute was to ensure that patent owners whose patents were expropriated could recover not only the value of the patent, but also costs, such as attorneys' fees, required to obtain damages. H.R. Rep. No 104–373, at 1–3 (1995).

The amendment became effective on the date of its enactment, October 19, 1996, and the Act specifically addresses the cases to which it applies: "The amendment . . . shall apply to actions under section 1498(a) of title 28, United States Code, that are pending on, or brought on or after, the date of enactment of this Act." Pub.L. No. 104–308. Defendant asserts that Section 1498 is inapplicable to this case because the case was not "pending" when the statute was enacted, given that the trial court's final judgment on the merits was issued almost eight months before. Thus, in defendant's view, this case was final as of February 22, 1996, even though appeals were soon to be filed and decided upon. Plaintiff, on the other hand, reads "pending" to encompass appeals, and even simple requests for attorneys' fees. Thus, the question the Court faces is, What did Congress intend by the word "pending"?

Congress did not define the word "pending" in the statute, nor did it give any guidance in the legislative history to Public Law 104–308. Therefore, the Court must first look to the ordinary, plain meaning of the word "pending." See Doyon Ltd. v. United States, 37 Fed.Cl. 10, 20 (1996) (citing Snap–On Tools Inc. v. United States, 26 Cl.Ct. 1045, 1057 (1992), aff'd by 26 F.3d 137 (Fed.Cir.1994)); Bickford v. United States, 228 Ct.Cl. 321, 656 F.2d 636, 640 (1981). Failing certainty in its search for plain meaning, the Court may look to legislative history and Congressional purpose for guidance in interpreting the statute. Piccadilly Cafeterias, Inc. v. United States, 36 Fed.Cl. 330, 334–35 (1996) (looking to legislative purpose to bolster court's definition of undefined statutory term); Rooks v. Secretary of the

as contemplated in the amendment for cases pending for over ten years. Instead they qualify for attorneys' fees only if the government's position was not substantially justified.

*Dep't of Health and Human Serv.*, 35 Fed. Cl. 1, 6 (1996) (turning to legislative purpose to determine definition of undefined statutory term).

Defendant asserts in its supplemental brief that "pending" does not have a single, plain meaning. Although the term much more commonly embraces plaintiffs' interpretation, defendant's observation arguably has some merit. However, the single case that defendant cites in support of its contention, *Capello v. District of Columbia Bd. of Educ.*, 669 F.Supp. 14, 17 (D.D.C.1987) ("The School Board's assertion that pending has only one meaning ... is flatly wrong."), is not controlling; on the contrary, this Court affords more deference to interpretations of the word "pending" enunciated by the Supreme Court of the United States, as well as circuit courts. *E.g.*, *Snyder v. Buck*, 340 U.S. 15, 20, 71 S.Ct. 93, 95 L.Ed. 15 (1950) ("[A]n action is nonetheless pending within the meaning of this section though an appeal is being sought...."); *Diaz v. Shallbetter*, 984 F.2d 850, 856 (7th Cir.1993) (concurrence) ("[T]he plain meaning of 'pending' includes cases pending on appeal."); *Eikenberry v. Callahan*, 653 F.2d 632, 635 (D.C.Cir.1981) ("The ordinary meaning of 'pending' includes cases pending on appeal."); *Danenberg v. Cohen*, 213 F.2d 944, 946 (7th Cir.1954) ("And a cause is pending within the meaning of this rule 'though an appeal is being sought.' ") (citing *Snyder*, 340 U.S. at 20, 71 S.Ct. 93). Because the plain, ordinary meaning of the word "pending" encompasses actions on appeal, Section 1498 applies to plaintiffs' case.[3]

Defendant further asserts that Congress's use of the word in an earlier portion of the bill sheds light on the meaning of the same word in the later portion. In that observation, and in the inference defendant draws from that observation, defendant is mistaken. The bill contains the word "pending" but twice. The second occurrence is the one at issue in this case: "The amendment made by subsection (a) shall apply to actions under 1498(a) ... that are *pending* on ... the date of enactment of this Act." Pub.L. 104–308(b) (emphasis added). The first is as follows, "Notwithstanding the preceding sentences, unless the action has been *pending* for more than 10 years from the time of filing to the time that the owner applies for such costs and fees ...." Pub.L. 104–308(a) (emphasis added). Defendant contends that "pending" in the above context "clearly refers to 'pending a final, appealable judgment.' " The language does not "clearly" refer to final judgment by the trial court, but instead, like the second occurrence of the same word, sheds no clear light on the intended definition of "pending." In the absence of Congressional intent to the contrary, the plain, ordinary meaning of the term, as discussed above, is the one to be applied under Section 1498.

## II. *DEFENDANT'S MOTION TO DISMISS*

On June 18, 1997, plaintiffs filed under EAJA their first application for attorneys' fees. Defendant objected to their application on the grounds that it was not timely, as the case was not yet final—a statutory requirement under EAJA. Once the case became final, defined by EAJA as the time when all

---

**3.** Even if defendant is correct in its assertion that the term "pending" does not have one plain, ordinary meaning, legislative history confirms our interpretation. Although the Committee Report does not define the term "pending," and thus does not directly resolve the issue, the legislative history as a whole provides support for the Court's interpretation. One of the elemental purposes of the act was to provide compensation for attorneys' fees to patent-holders whose patents were usurped by the government. H.R. Rep. No 104–373, at 1–3 (1995). Defendant's interpretation of the word "pending" would deny plaintiffs the right to apply for attorneys' fees under newly amended Section 1498, as this Court's final judgment had been rendered before the date plaintiffs applied for attorneys' fees— although appeals were in progress. Such a narrow definition of "pending" would restrict the retroactivity Congress mandated by applying the law to all pending cases. Consequently, based on the underlying policy of the Act, the Court believes the term "pending" should be given a broader reading than that proposed by defendant. *See, e.g.*, *Eikenberry*, 653 F.2d at 635 (employing similar reasoning to interpret definition of "pending" in statute); *Piccadilly*, 36 Fed.Cl. at 334–35 (employing similar reasoning to define a statutory term); *Rooks*, 35 Fed.Cl. at 6 (employing similar reasoning to define a statutory term). Consequently, newly amended Section 1498 applies to plaintiffs' case, which was in the midst of an appeal on the date of enactment and thus "pending" for the purposes of this statute.

appeals are exhausted, plaintiffs filed on October 27, 1997, a second application for attorneys' fees, citing both EAJA and Section 1498. Defendant then argued, assuming Section 1498 applied to plaintiffs' case, that under 28 U.S.C. § 2517(b), this Court's jurisdiction to entertain plaintiffs' application terminated on January 22, 1998, with payment of the judgment on the merits, in part because plaintiffs had not, in defendant's view, filed a timely application for attorneys' fees given that plaintiffs did not file such a claim before the case became final.

Defendant objected to plaintiffs' first application because it was filed *before* the case was final; defendant now objects to plaintiffs' second application because it was filed *after* the case became final.

Section 1498 is silent with regard to the timing required for an application for attorneys' fees under the 1996 amendment. Like the definition of "pending" discussed above, there is no specific elucidation in the statute or its legislative history as to what Congress intended with regard to timing for applications. Yet Congress intended to "help small business, independent inventors and nonprofit organizations recover the legal costs associated with defending their patents when the Federal government is found liable for taking and using them." H.R. Rep. No 104–373, at 1.

Imposing on plaintiffs a deadline absent in the bill and contrary to deadlines in similar statutes, *see, e.g.,* 28 U.S.C. § 2412 (establishing that application for attorneys' fees under EAJA must be made within 30 days of date when all appeals are exhausted); 42 U.S.C. § 4654 (interpreted as allowing judicial discretion in setting timetable for applications once trial judgment is issued[4]); RCFC 81(e) ("Applications for fees and expenses shall be filed with the clerk within 30 days after final judgment."), would subvert Congressional intent "to enhance fairness in compensating owners of patents used by the United States." 142 CONG. REC. S12390 (daily ed. Oct. 3, 1996). Instead, allowing plaintiffs to file their application for attorneys' fees within a reasonable time after all appeals are exhausted acknowledges the fact that Congress intended to help patent-holders whose patents had been taken by the government, specifically applying the statute to all pending cases on the date of enactment *without* establishing a timing procedure by which the application had to be made.

Further, defendant's reliance on section 2517 to divest this Court of jurisdiction is misplaced. Section 2517(b) provides:

> Payment of any such [final] judgment ... shall be a full discharge to the United States of all claims and demands arising out of the matters involved in the case or controversy, unless the judgment is designated a partial judgment, in which event only the matters described therein shall be discharged.

28 U.S.C. 2517(b). Yet neither payment of the underlying judgment nor application after the case is final divests the Court of jurisdiction over applications for attorneys' fees under EAJA. Rather, as defendant pointed out to this Court and to plaintiffs, the case *must* be final for an application under EAJA to be timely. Thus, even though judgment may have been paid, section 2517 does not deny the Court jurisdiction to entertain an EAJA application. Nor does section 2517 terminate the Court's jurisdiction to hear an application for attorneys' fees under Section 1498. Indeed, portions of Section 1498 mimic EAJA word for word. *Compare* 28 U.S.C. § 1498 ("[R]easonable and entire compensation shall not include such costs and fees if *the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.*") (emphasis added) *with* 28 U.S.C. § 2412 ("[A] court shall award ... fees and other expenses ... unless *the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.*") (emphasis added). Thus, just as section 2517

---

4. *E.g., Osprey Pacific Corp. v. United States,* 41 Fed.Cl. 150, 160 (1998) (giving plaintiffs 90 days from date of opinion to file application for attorneys' fees under 42 U.S.C. § 4654); *Heydt v. United States,* 38 Fed.Cl. 286, 315 (1997) (giving 30 days for same); *Loveladies Harbor, Inc. v. United States,* 21 Cl.Ct. 153, 161 (1990), *aff'd by* 28 F.3d 1171 (Fed.Cir.1994) (giving 60 days for same); *Houser v. United States,* 12 Cl.Ct. 454, 475 (1987) (giving 30 days for same).

does not terminate the Court's jurisdiction to entertain an application for attorneys' fees under EAJA, similarly it does not terminate the Court's jurisdiction to entertain an application for attorneys' fees under Section 1498.

▇ The Court also notes that " '[w]hen two statutes conflict[,] the general rule is that the statute last in time prevails as the most recent expression of the legislature's will.' " *International Union Local 737 v. Auto Glass Employees Credit Union,* 72 F.3d 1243, 1248–49 (6th Cir.1996), *quoting Boudette v. Barnette,* 923 F.2d 754, 757 (9th Cir. 1991). It is presumed that Congress legislates with full awareness of existing law, and that conflicts between statutes are to be resolved in favor of the most recent statute. *Id.* Consequently, to the extent, if any, that the amendment to Section 1498 conflicts with section 2517(b), Section 1498 prevails.

▇ Finally, defendant cites no authority for its proposition that plaintiffs' application for attorneys' fees is not within the jurisdiction of the Court. Rather, the cases cited by defendant involve the doctrine of res judicata, as the cases center around claims that could have been raised in the initial suit. The instant case, however, is a petition for attorneys' fees, an issue that, by its very nature, cannot be determined until the case is complete. Plaintiffs first sought an award for attorneys' fees in their initial complaint filed June 9, 1988, and filed their second application within a reasonable time after final judgment, after all appeals were exhausted (or time to do so expired), and prior to payment of the judgment.[5] Although the Court's decision on plaintiffs' application for attorneys' fees will follow payment of the underlying judgment, the application itself was made *before* payment; such payment simply cannot divest this Court of jurisdiction to hear plaintiffs' prior application.

▇ In light of the absence of Congressional direction otherwise, the Court therefore finds that plaintiffs may, under newly amended Section 1498, file an application for attorneys' fees within a reasonable time after all appeals are exhausted. Further, the Court finds that plaintiffs' October 27, 1997 application suffices as an adequate application under Section 1498 and was filed within a reasonable time after the case became final. The parties having waived further oral argument, the Court now turns to the merits regarding plaintiffs' application for attorneys' fees under Section 1498.

## III. *PLAINTIFFS' MOTION FOR ATTORNEYS' FEES*

### A. Governing Principles

Plaintiffs' motion for fees and expenses is based upon the 1996 amendment to 28 U.S.C. § 1498. Section 1498 provides, in pertinent part,

> Whenever an invention ... covered by a patent of the United States is used ... by or for the United States without license of the owner thereof ..., the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture. Reasonable and entire compensation shall include the owner's reasonable costs, including reasonable fees for expert witnesses and attorneys, in pursuing the action .... Notwithstanding the preceding sentences, unless the action has been pending for more than 10 years from the time of filing to the time that the owner applies for such costs and fees, reasonable and entire compensation shall not include such costs and fees if the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 1498.[6] Congress's stated intent in amending the statute was to ensure that

---

5. In fact, one of the cases defendant cites supports plaintiffs' contention that section 2517(b) is simply a codification of the doctrine of res judicata. *See Register v. United States,* 150 Ct.Cl. 752, 753, 281 F.2d 448 (citing section 2517(b) as authority for the finding that, to the extent that plaintiff sought additional backpay for a time period for which he had already litigated a suit and received payment, "his claim is plainly barred by the doctrine of res judicata").

6. Plaintiffs concede that their case had been pending only nine years and three months on the date of their application. Thus, they do not qualify for the automatic award of attorneys' fees as contemplated in the amendment for cases

patent owners whose patents were expropriated could recover not only the value of the patent, but also costs, such as attorneys' fees, required to obtain damages. H.R. Rep. No 104–373, at 1–3 (1995).

Because Section 1498 is a waiver of sovereign immunity, its language must be strictly construed. *de Graffenried v. United States*, 25 Cl.Ct. 209, 215 (1992). Fees and expenses are to be awarded only if (1) defendant's position was not substantially justified; or (2) no special circumstances make an award unjust.[7]

Defendant argues that its position was substantially justified and that plaintiffs failed to adequately establish their fees. Because the Court concludes that defendant's position was substantially justified, it does not address the question of whether plaintiffs adequately established their fees.

■ The statutory phrases critical to the instant inquiry are "substantially justified" and "position of the United States." The meaning of each phrase has been discussed frequently by the courts, including the United States Supreme Court. In considering the use of the phrase "substantially justified" in the Equal Access to Justice Act, the Supreme Court stated:

> We are of the view, therefore, that as between the two commonly used connotations of the word "substantially," the one most naturally conveyed by the phrase before us here is not "justified to a high degree," but rather "justified in substance or in the main"—that is, justified to a degree that could satisfy a reasonable person. That is no different from the "reasonable basis both in law and fact" formulation . . . .

*Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). Defendant bears the burden of demonstrating that its position was substantially justified. *See*

*Doty v. United States*, 71 F.3d 384, 385 (Fed. Cir.1995). The relevant inquiry is, therefore, whether defendant has shown that a reasonable person could have considered defendant's position to be correct. *See Pierce*, 487 U.S. at 566 n. 2, 108 S.Ct. 2541 (interpreting "substantially justified" pursuant to EAJA). Stated differently, for defendant to prevail, the Court must conclude that the position of the United States had a reasonable basis in law and fact. *See id.* Success before a lower court does not necessarily indicate that the position espoused in that tribunal was substantially justified. *See Community Heating & Plumbing Co. v. Garrett*, 2 F.3d 1143, 1145–46 (Fed.Cir.1993).

■ The phrase "position of the United States" has been defined to include both defendant's litigation position and the agency action or inaction that precipitated the litigation. *See* 28 U.S.C. § 2412(d)(2)(D) (" '[P]osition of the United States' means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based . . . ."); *see also Chiu v. United States*, 948 F.2d 711, 715 (Fed.Cir.1991) (stating that "the entirety of the conduct of the government is to be viewed, including the action or inaction by the agency prior to litigation"). Therefore, "to determine whether the overall position of the United States is substantially justified, trial courts are instructed to look at the entirety of the government's conduct and make a judgment call whether the government's overall position had a reasonable basis in both law and fact." *Chiu*, 948 F.2d at 715 (footnotes omitted). Because the Court is to consider the totality of the circumstances in conducting this inquiry, defendant's position can be substantially justified even though it may have taken an unreasonable stance during an individual phase of the dispute.[8] *See Roanoke River*

---

pending for over 10 years. Instead they qualify for attorneys' fees only if defendant's position was not substantially justified.

7. Although there are some differences between Section 1498 and EAJA, the language regarding the circumstances under which an award of attorneys' fees is appropriate is strikingly similar. Thus in the absence of Congressional direction or

Court precedent otherwise, this Court employs an analysis similar to that used in EAJA actions, and cites to cases involving EAJA applications as support for its conclusions.

8. Once it has been determined that a plaintiff is eligible for an award of fees and expenses, that is, once the Court has concluded that defendant's overall position was not substantially justified,

*Basin Ass'n v. Hudson*, 991 F.2d 132, 139 (4th Cir.1993).

### B. Substantially Justifiable Position

Plaintiffs maintain that defendant's settlement position, both prior to the liability trial and again after the finding of government liability, was unreasonable. As a result, plaintiffs argue, defendant's position was not substantially justified, and an award of fees and expenses is appropriate. However, the Court finds that the overall position of the United States was substantially justified.

#### 1. Defendant's Settlement Positions

Plaintiffs maintain that defendant's only settlement offer prior to the liability trial, which was for $1,000, was frivolous. According to plaintiffs, costs expended by each party had already exceeded that amount, and it would have cost defendant significantly more than $1,000 just to try the issue of liability. Plaintiffs assert that defendant's offer, therefore, actually created for plaintiffs a disincentive to settle. Furthermore, after the finding that defendant was liable for infringement, defendant's only settlement overture was that it would consider an offer from plaintiff, if made, to settle for the amount that defendant essentially was conceding at the damages trial (between $350,000 and $500,000). Settling for that amount, plaintiffs claim, would have been a "complete capitulation" in that plaintiffs would have been settling for the least they could have recovered at trial.

■ As an initial matter, the Court notes that, in providing guidelines for a similar award of fees, EAJA articulates that "[w]hether or not the position of the United States was substantially justified shall be determined on the basis of the record ... made in the civil action for which fees and other expenses are sought." 28 U.S.C. § 2412(d)(1)(B). It follows that declarations

filed by the parties' attorneys in conjunction with an application pursuant to Section 1498, which purport to describe their settlement discussions, cannot serve as the basis for an award of fees and expenses, as they are not part of the record made in the civil action. Because the record contains little evidence with regard to the parties' settlement negotiations, those negotiations are not relevant in assessing defendant's position for purposes of plaintiffs' Section 1498 application.

Even if the Court did consider the competing declarations, it would conclude that defendant's settlement positions were reasonable. This reasonableness is especially evident after considering plaintiffs' own posture before the liability trial, which, according to defendant, included a suggestion to settle for more than $7 million. Defendant was perfectly reasonable in believing that it would prevail on the issue of liability,[9] and to therefore refuse to make any settlement offer. Refusing to settle, particularly when plaintiff was demanding millions of dollars, cannot be considered unreasonable.

■ Assuming, *arguendo*, that defendant's settlement position was unreasonable, the Court concludes that such unreasonableness was not sufficient to justify an award of fees and expenses. Plaintiffs cite several cases for the proposition that an unreasonable settlement position is sufficient to prevent a finding that defendant's position was substantially justified. *See Herring v. United States*, 781 F.2d 119, 122 (8th Cir.1986); *Rawlings v. Heckler*, 725 F.2d 1192, 1196 (9th Cir.1984). These cases do not, however, control the instant case. First, this Court is not bound by decisions of the Eighth and Ninth Circuits. Second, both of these cases were decided before the Supreme Court's *Jean* opinion, and are, in this Court's view, inconsistent with *Jean's* instruction to look at a case "as an inclusive whole" when consider-

---

the Court may apportion the fee award to account for the degree of success achieved by the plaintiff during individual phases of the dispute, or on specific issues during the litigation. *See Community Heating & Plumbing Co.*, 2 F.3d at 1146. Determining what constitutes a reasonable fee is, however, a different inquiry than that required when making the threshold determination of whether defendant's overall position was

substantially justified. *See Commissioner, Immigration & Naturalization Serv. v. Jean*, 496 U.S. 154, 165–66, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990).

9. In fact, this Court initially held that defendant did not infringe plaintiffs' patents. *Gargoyles I*, 26 Cl.Ct. at 1373.

ing the reasonableness of defendant's position. *See Jean*, 496 U.S. at 161–62, 110 S.Ct. 2316. Finally, the Court considers defendant's position in the instant case to be significantly more reasonable than defendant's position in the above-cited cases. Consequently, defendant's settlement position in this case, standing alone, is not sufficient to prevent this Court from concluding that defendant's overall position was substantially justified.

### 2. Defendant's Litigation Position

■ Plaintiffs next argue that defendant has failed to satisfy its burden of establishing that its litigation position was substantially justified. Plaintiffs identify specific defenses that were raised by defendant and rejected by the Court in the liability portion of this litigation, and argue that defendant has failed to demonstrate the reasonableness of each such defense. The flaw in plaintiffs' analysis is that it fails to recognize that in evaluating defendant's position, the Court does not examine defendant's stance on every individual issue addressed in the case. Rather, the Court's task is to evaluate, based upon the totality of the circumstances, whether defendant's overall position was substantially justified. *See Roanoke River Basin Ass'n*, 991 F.2d at 139.

After three trips through this Court, and two through the circuit court, it finally has been determined that defendant (1) did not infringe plaintiffs' design patent, (2) did not literally infringe two of the three claims of the utility patent, (3) did not infringe two of the three claims of the utility patent under the doctrine of equivalents, (4) did literally infringe one claim of the utility patent, and (5) did infringe one claim of the utility patent under the doctrine of equivalents. Clearly, some of the defenses defendant raised were not as strong as others; indeed, the Court rejected several. Further, the Federal Circuit ruled against defendant twice, both on the issue of infringement and on damages. Advancing an incorrect theory, however, does not constitute unreasonableness. *See Pierce*, 487 U.S. at 566 n. 2, 108 S.Ct. 2541. At no time during this litigation did defendant raise an issue or take a stance that was

unreasonable, and on many issues defendant actually prevailed. After a careful review of the record, and considering the totality of the circumstances, the Court concludes that defendant's overall litigation position was justified to a degree that could satisfy a reasonable person.

### 3. The Agency's Actions

Finally, plaintiffs argue that the agency action that gave rise to the underlying patent case was so outrageous that the position of the United States cannot fairly be described as substantially justified. The Court disagrees with plaintiffs' characterization of the agency's conduct. The Army did infringe plaintiffs' utility patent when it procured the protective eyewear from AO. After careful consideration, the Court finds that the Army's conduct was reasonable. The statute itself provides the government with the ability to use or manufacture an invention described in an individual's patent, and an individual whose patent has been taken in this way is entitled to seek recourse against the United States in this Court for "recovery of his reasonable and entire compensation for such use and manufacture." 28 U.S.C. § 1498(a). The Court finds that Section 1498 was passed, in part, to give the United States the ability to take patents when needed and sort out its liability, if any, to the patent holder at a later time. The legislative history to Section 1498 goes so far as to suggest that because the United States was authorized by Congress to take licenses in patents, the government's position could not be considered unreasonable. H.R.Rep. No. 104–373, at 2 (1995).

The Court need not address the agency's administrative position because plaintiffs here did not file an administrative claim with the agency alleging patent infringement. Because defendant's overall position, including both the underlying action of its agency giving rise to this litigation and its litigation position, was substantially justified, plaintiffs' motion for attorneys' fees under Section 1498 must be denied.

### CONCLUSION

For the reasons discussed above, the Court holds that Section 1498 applies to plaintiffs'

case, and that plaintiffs' October 27, 1997 application for attorneys' fees under Section 1498 is timely. Defendant's motion to dismiss is therefore denied.

The Court further concludes, after considering the totality of the circumstances, including both the underlying agency action and defendant's litigation position, that the position of the United States in this dispute was substantially justified. Plaintiffs, therefore, are not entitled to an award of fees or expenses under Section 1498. Plaintiffs' application for attorneys' fees is denied.