T.C. Memo. 1999-355


UNITED STATES TAX COURT


PHILIP L. FIRETAG, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 4021-97.                    Filed October 25, 1999.


<u>Irvin J. Slotchiver</u>, for petitioner.

<u>James E. Gray</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

GALE, <u>Judge</u>:  Respondent determined the following deficiencies in petitioner's Federal income tax:

| Year | Deficiency |
|------|-----------|
| 1992 | $219,032 |
| 1993 | 46,944 |

After concessions, we must decide the following: (1) Whether petitioner is required to recognize as income in the years in issue amounts deposited into certain accounts as described below. We hold that he is. (2) Whether recognition of the deposited amounts in the year of deposit constitutes a change in accounting method, requiring an adjustment to petitioner's income under section 481.[1] We hold a section 481 adjustment is required.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. We incorporate by this reference the stipulation of facts, the supplemental stipulation of facts, and the attached exhibits. At the time of filing the petition, petitioner resided in Charleston, South Carolina.

Petitioner was a licensed professional bail bondsman, and before trial he had been in the bonding business for more than 20 years. Petitioner conducted his bonding business as a sole proprietorship. The proprietorship income was reported using the accrual method of accounting. Petitioner wrote bonds for criminal defendants to ensure their future appearance in court. The bonds varied in amount and were set by the court. The defendants, or someone on their behalf (collectively,

---

[1] Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

petitioner's clients), would pay petitioner a fee (usually equal to 10 percent of the amount of the bond, sometimes less), and in exchange petitioner would assume liability under the bond, guaranteeing the defendant's appearance at court proceedings. Under the standard bonding agreement used by petitioner, the fee was due from a client when the agreement was signed. In addition, the bonding agreement provided that the fee was earned upon execution of the agreement. If petitioner was unable to perform on his guaranty, i.e., if the defendant failed to make the court appearance, petitioner was liable to the court for the full amount of the bond.[2]

As a professional bail bondsman, petitioner was required to comply with chapter 53 of title 38 of the Code of Laws of South Carolina. Pursuant to these provisions, petitioner was required to maintain, with the clerk of court of the relevant South Carolina jurisdiction, passbook savings accounts or certificates of deposit in an amount equal to 25 percent of all outstanding bonds on which he was liable in that jurisdiction.[3] The amount required to be maintained was recomputed as of the first day of

---

[2] Petitioner's practice generally was to obtain a co-guarantor on the bond, such as a family member or friend of the defendant.

[3] In addition, no single bond written by petitioner could be in an amount greater than 50 percent of the amount maintained with the clerk of court. See S.C. Code Ann. sec. 38-53-330 (Law. Co-op. 1989).

each month, on the basis of the bonds outstanding on that date, and petitioner had until the 16th of the month to make any additions required to ensure that the amounts maintained with the clerk were equal to at least 25 percent of the face amount of bonds outstanding on the first of the month. See S.C. Code Ann. sec. 38-53-270 (Law. Co-op. 1989). The savings accounts or certificates of deposit were held in trust in the name of the clerk of court for the "sole protection and benefit of the holder of bail bonds" and functioned as security for petitioner's potential liability on outstanding bonds. S.C. Code Ann. sec. 38-53-280 (Law. Co-op. 1989). In the event of a forfeiture, i.e., the failure of a defendant to appear for trial, making petitioner liable for the bond amount, petitioner had the option of meeting his liability using funds maintained with the clerk of court or from some other source.

Under South Carolina law, petitioner was entitled to a return of the excess whenever the amounts maintained with the clerk exceeded 25 percent of petitioner's bonds outstanding and was entitled to the return of all such amounts when his bond obligations in the jurisdiction were completely satisfied. See id.

Pursuant to the foregoing provisions of South Carolina law, petitioner maintained various savings accounts and certificates of deposit with the Clerk of Court for Charleston County, South

Carolina, prior to and during the years in issue, in connection with his activities as a professional bail bondsman. We shall hereinafter refer to these savings accounts and certificates of deposit held by the Charleston County Clerk of Court as the Charleston County Court account. At no point during the years in issue, or in any year prior thereto, were funds from the Charleston County Court account used to satisfy a forfeiture.

Petitioner received any interest earned on the funds in the Charleston County Court account.

Petitioner also kept two other accounts, one with respect to the U.S. District Court and another which the parties refer to as the "in-house account". The record does not establish what provisions of law or contract terms governed the U.S. District Court account.[4] In particular, the record does not disclose under what schedule petitioner was required to deposit, or was entitled to return of, amounts in the U.S. District Court account.

As for the in-house account, it was not required by any law or contract. It was established at the suggestion of petitioner's father, a bookkeeper, who kept petitioner's books and prepared his tax returns. All fees collected by petitioner

_____

[4] In his opening statement at trial, petitioner's counsel indicated that no statute governed the U.S. District Court account, and that an amount equal to the entire face value of the bond was required to be deposited therein. However, no evidence was adduced regarding the foregoing.

for bonding services were deposited into the in-house account.
The moneys from the in-house account were then disbursed for four
purposes:  To satisfy petitioner's liability in the event of
forfeitures, to satisfy required increases in the amounts in the
Charleston County Court and U.S. District Court accounts, to pay
petitioner's business expenses, and to pay petitioner a
"salary".[5]

Petitioner reported gross receipts from his bonding business
of $80,456 in 1992 and $100,467 in 1993.  However, for taxable
years prior to and including 1992 and 1993, petitioner did not
report as income the amounts that were deposited into the three
accounts.  The balances in the accounts were as follows on the
dates indicated:

|  | 1/1/92 | 12/31/92 | 12/31/93 |
|---|---|---|---|
| Charleston County Court account | $393,000 | $537,000 | $628,000 |
| U.S. District Court account | 55,000 | 30,000 | 30,000 |
| In-house account | 107,909 | 79,636 | 92,699 |
| Total | 555,909 | 646,636 | 750,699 |

In the notice of deficiency, respondent determined that
petitioner's method of reporting bail bond fees did not clearly
reflect income, and that a change in method of accounting was

_____

[5] Petitioner's testimony regarding his salary is limited and
vague.  On the basis of his testimony, the amount of the salary
appears to have been either a percentage of the fees he collected
or a percentage of the amount in the in-house account.

necessary.  Respondent determined that section 481 applied, and that petitioner was required to include in income in 1992 the combined balance of the three accounts as of January 1, 1992; namely, $555,909.  In addition, respondent determined that petitioner was required to include in income the net increases in the combined balances of the Charleston County Court and U.S. District Court accounts in the amount of $119,000 in 1992 and $91,000 in 1993.

## OPINION

Section 446(b) provides as follows:  "If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary, does clearly reflect income."  For an accrual method taxpayer, "it is the right to receive accrual basis income, not its actual receipt, that determines the time of its inclusion as gross income."  Stendig v. United States, 843 F.2d 163, 165 (4th Cir. 1988) (citing Commissioner v. Hansen, 360 U.S. 446, 464 (1959)); see Johnson v. Commissioner, 108 T.C. 448, 459 (1997), affd. in part, revd. in part and remanded on another ground 184 F.3d 786 (8th Cir. 1999); secs. 1.446-1(c)(1)(ii), 1.451-1(a), Income Tax Regs.  Generally, all the events that fix the right to receive income have occurred when the earliest of the following occurs:  The income is (1) actually or

constructively received, (2) due, or (3) earned by performance. See <u>Johnson v. Commissioner</u>, <u>supra</u> at 459. In the instant case, all three of these occurred when petitioner received a fee from a client: It was actually received; it was due under the terms of the bonding agreement; and it was earned by the execution of the bond agreement. Thus, the fees were income when received.

<u>Charleston County Court and U.S. District Court Accounts</u>

In <u>Stendig v. United States</u>, <u>supra</u>, the Court of Appeals held that rental receipts received by an accrual basis partnership from its housing project but required by the lender to be deposited into reserve accounts securing repayment to the lender were nevertheless income to the partnership in the year deposited. The partners had argued that the amounts were not income until a later year, when they obtained unrestricted access to them. The key question for the Court of Appeals was "whether * * * the partnership acquired the '<u>fixed right to receive</u> the [funds deposited in the] reserves.'" <u>Id.</u> at 165 (quoting <u>Commissioner v. Hansen</u>, <u>supra</u>). The Court of Appeals held that the partnership had acquired the fixed right, and hence must accrue the amounts as income, "in the years of their deposit" rather than at "the time of actual receipt." <u>Id.</u> at 166. The reason was that any use of the funds would inure to the benefit of the partnership. See <u>id.</u> at 166-167.

Petitioner, as an accrual method taxpayer with respect to his business, was required to include in gross income of the business amounts deposited into the Charleston County Court account when he acquired the fixed right to receive those amounts. As in Stendig v. United States, supra, this occurred when the amounts were received from his clients, even though some of the proceeds may have been required to be deposited with a third party. The situation is virtually identical with the facts in Stendig. Like the partnership in Stendig, petitioner collected receipts and was required to deposit a portion of them as a necessary condition of doing business.[6] Like the partnership in Stendig, petitioner did not have access to the funds while they were on deposit (except for interest earned), but the funds would ultimately be his; i.e., the deposits would inure to petitioner's benefit. The amounts on deposit either would be returned to him because the level of outstanding bonds had been reduced or would be used by the clerk toward satisfaction of petitioner's obligation under a bond. See Commissioner v. Hansen, supra at 466. Therefore, we find that petitioner was required to include in gross income the amounts deposited into the Charleston County Court account in the year received from clients.

---

[6] Petitioner argues that in his case the deposits were required by law rather than by contract. This is irrelevant. In either case, the deposits were necessary to do business.

With respect to the U.S. District Court account, petitioner has not adduced evidence regarding the terms under which amounts were required to be deposited for bonds written for defendants in U.S. District Court.  In his opening statement, petitioner's counsel indicated that deposits equal to 100 percent of the face amount of the bond were required.  Presumably, these amounts were either returned to petitioner when the defendant satisfactorily appeared or forfeited if he did not.  In either case, the deposited amounts would inure to petitioner's benefit.  Because petitioner has not come forward with the terms of the U.S. District Court bonding arrangements, he has failed to carry his burden of proving respondent's determination erroneous.

<u>In-House Account</u>

The in-house account appears, in part, to be an effort by petitioner to set up a reserve for paying potential bond forfeitures.  In other words, it acts, in part, as a reserve against contingent liability.  The funds in the in-house account were ultimately disbursed solely for petitioner's benefit:  To satisfy his obligations by paying bond forfeitures or increasing the amounts on deposit in the Charleston County Court or the U.S. District Court accounts; to pay his business expenses; or to pay himself a "salary".  As with the Charleston County Court account and presumably with the U.S. District Court account, only two things could happen to the funds in the in-house account:  They

could be paid to petitioner in cash or they could be used to pay an obligation of petitioner. See <u>Commissioner v. Hansen</u>, 360 U.S. at 465-466. In either case, they would inure to his benefit. Thus, following <u>Commissioner v. Hansen</u>, <u>supra</u>, and <u>Stendig v. United States</u>, 843 F.2d 163 (4th Cir. 1988), the amounts deposited in the in-house account are income in the year received from clients, notwithstanding their deposit.

For the foregoing reasons, we sustain respondent's determination that petitioner must include in gross income the net increase in the combined balances of the Charleston County Court and the U.S. District Court accounts in the amount of $119,000 in 1992 and $91,000 in 1993.[7]

Section 481 Adjustment

In the notice of deficiency respondent determined that section 481 applied, and that under section 481, petitioner was required to include in income the amounts on deposit in the three accounts as of the beginning of 1992. We agree.

Section 481 provides as follows:

> SEC. 481(a). General Rule.--In computing the taxpayer's taxable income for any taxable year (referred to in this section as the "year of the change")--
>
> > (1) if such computation is under a method of accounting different from the method under which the taxpayer's taxable income for the preceding taxable year was computed, then

---

[7] See <u>infra</u> note 13.

(2) there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted, except there shall not be taken into account any adjustment in respect of any taxable year to which this section does not apply unless the adjustment is attributable to a change in the method of accounting initiated by the taxpayer.

By its terms, section 481 applies only when there is a change in method of accounting. Section 1.446-1(e)(2)(ii)(a), Income Tax Regs., describes a change in method of accounting as follows: "A change in the method of accounting includes * * * a change in the treatment of any material item * * * A material item is any item which involves the proper time for the inclusion of the item in income or the taking of a deduction." In other words, a change in method of accounting does not involve whether or not an item of income is included, but when. See Knight-Ridder Newspapers, Inc. v. United States, 743 F.2d 781, 798 (11th Cir. 1984). However, the regulations provide several specific limitations:

A change in method of accounting does not include correction of mathematical or posting errors, or errors in the computation of tax liability * * * . Also, a change in method of accounting does not include adjustment of any item of income or deduction which does not involve the proper time for the inclusion of the item of income or the taking of a deduction. * * * A change in the method of accounting also does not include a change in treatment resulting from a change in underlying facts. * * * [Sec. 1.446-1(e)(2)(ii)(b), Income Tax Regs.]

Respondent relies principally on <u>Rankin v. Commissioner</u>, T.C. Memo. 1996-350, affd. 138 F.3d 1286 (9th Cir. 1998), to support his determination applying section 481. In <u>Rankin</u>, the taxpayer, who used the cash receipts and disbursements method of accounting, was a bail bondsman associated with an insurance company surety. The bonds were contracts between the criminal defendant, the State, and the insurance company. The insurance company was principally liable to the State if the defendant failed to appear at trial and the bond was forfeited or a late fee was charged. However, the taxpayer had a contract with the insurance company under which the taxpayer would indemnify the insurance company for the amount of any forfeited bonds or late fees. The taxpayer collected 10 percent of the face amount of the bond as a fee, paid a portion of the fee to the insurance company, deposited a portion of the fee into a specific account known as the Build Up Fund or BUF account, and kept the remainder. The BUF account served as security for the taxpayer's promise to indemnify the insurance company. The amount accumulated in the BUF account was a percentage of the amount of the outstanding bonds. The insurance company functioned as trustee of the BUF account and had the sole power to withdraw funds from the BUF account but could use any withdrawn funds only to satisfy the taxpayer's indemnity obligations. The insurance company gave the taxpayer the option of indemnifying from the BUF

account or from independent funds. When the taxpayer terminated his agreement and all outstanding bonds were satisfied, the taxpayer would be entitled to the funds in the BUF account. The taxpayer deducted deposits into the BUF account as a portion of cost of goods sold. See Rankin v. Commissioner, supra.

The parties in Rankin agreed that the taxpayer was not permitted to deduct deposits into the BUF account.[8] The parties disagreed over the treatment of the amounts accumulated in the BUF account prior to the years in issue. In an attempt to avoid the application of section 481, the taxpayer argued that the change in treatment of the deposits into the BUF account that the Commissioner was requiring was not a change in method of accounting. We held that it was, because the change affected only the timing of inclusion, not the ultimate fact of inclusion. See id.; see also Schuster's Express, Inc. v. Commissioner, 66 T.C. 588, 596-597 (1976), affd. without published opinion 562 F.2d 39 (2d Cir. 1977); sec. 1.446-1(e)(2)(ii)(b), Income Tax Regs. ("a change in method of accounting does not include adjustment of any item of income or deduction which does not

_____

[8] The parties relied on Sebring v. Commissioner, 93 T.C. 220 (1989), an earlier case with virtually identical facts. The issue in Sebring was whether a cash basis bail bondsman could properly deduct deposits into a BUF account at the time of deposit. We held that he could not deduct amounts when they were deposited, even though the deposits were mandatory. See id. at 227.

involve the proper time for the inclusion of the item of income or the taking of a deduction").

We consider first the Charleston County Court and U.S. District Court accounts.  Here, the instant case is indistinguishable from Rankin.  As in Rankin, respondent's change of petitioner's treatment of the amounts deposited into the accounts was a change in method of accounting, because it affected only the timing of inclusion, not the ultimate fact of inclusion.  Under petitioner's method, he would have been required to include in income the funds in the accounts in the year they ultimately became available to him.[9]  Any amounts actually paid to satisfy forfeited bonds would not be included.[10] Under respondent's method, petitioner would be required to include in income the funds in the accounts in the year of deposit, but he would be entitled to deductions for amounts actually paid to satisfy forfeited bonds, so the total amount required to be included in income would be the same.  Thus, respondent's method alters only the timing of inclusion, not the

---

[9] The evidence establishes that petitioner was entitled to receive all of the amounts in the Charleston County Court account when his bond obligations were completely satisfied.  The same appears to be true of the U.S. District Court account; at the least, there is no evidence, or suggestion, to the contrary.

[10] As we have found, no funds from the Charleston County Court account were used to satisfy a forfeiture before or during the years in issue.

fact of inclusion.  It is therefore a change in method of accounting, and section 481 applies.

We next consider the in-house account.  Under petitioner's method, he would have been required to include in income in the year of disbursement any funds disbursed from the in-house account for his benefit.[11]  He would be entitled to take deductions for all allowable business expenses.  Further, petitioner would ultimately receive any funds remaining in the in-house account.[12]  Under respondent's method, petitioner would be required to include in income the funds in the account in the year of deposit, but he would be entitled to take deductions for amounts used to pay all allowable business expenses, so the total amount required to be included in income would be the same.  Once again, respondent's method alters only the timing of inclusion, not the fact of inclusion.  It is therefore a change in method of accounting, and section 481 applies.

Section 481(a)(2) authorizes "those adjustments which are determined to be necessary solely by reason of the change [in method of accounting] in order to prevent amounts from being

_____

[11] That is, any funds used to satisfy a liability in the event of forfeiture, to satisfy required increases in the amounts in the Charleston County Court and U.S. District Court accounts, to pay business expenses, or to pay petitioner's "salary".

[12] The precise nature of the in-house account is not clear. In testimony, petitioner refers to it as an "escrow account". However, there is no evidence, or suggestion, that petitioner would not receive any funds remaining in the account.

* * * omitted". Further, it is well established that section 481 supersedes the statute of limitations. See Graff Chevrolet Co. v. Campbell, 343 F.2d 568 (5th Cir. 1965); Superior Coach, Inc. v. Commissioner, 80 T.C. 895, 912 (1983). If petitioner merely changed, starting in 1992, to an accounting method under which amounts are included in income when received from clients, this method would not result in the inclusion in income of amounts previously excluded because deposited into the court and in-house accounts. Without section 481, such amounts would generally escape taxation. Section 481 allows respondent to prevent such omissions by requiring petitioner to include in income in 1992 the amounts previously accumulated in the three accounts.

Petitioner argues that section 481 does not apply because there has been no change in method of accounting. It is true that a change in method of accounting is necessary to trigger section 481, but petitioner's attempts to show that there was no change in method are unavailing. Petitioner first argues that there was no change in method of accounting, relying on section 1.446-1(e)(2)(ii)(b), Income Tax Regs., which provides that "A change in the method of accounting * * * does not include a change in treatment resulting from a change in underlying facts." However, although petitioner argues in general that there was a change in underlying facts, he points to no such change, and we have found none.

Petitioner next relies on another provision of the same regulation, which states: "A change in method of accounting does not include correction of mathematical or posting errors, or errors in the computation of tax liability". Sec. 1.446-1(e)(2)(ii)(b), Income Tax Regs. Petitioner argues that the accounting treatment of the deposits was not a method of accounting but mere error, relying on Korn Indus., Inc. v. United States, 209 Ct. Cl. 559, 532 F.2d 1352 (1976). In Korn Indus., the taxpayer manufactured furniture. The taxpayer used separate inventories for raw materials, work-in-process, supplies, and finished goods. There were 14 kinds of material in the finished furniture; e.g., lumber, mirrors, glue, nails. During the years in issue, 3 of the 14 materials costs had not been included in the finished goods inventory, although they were included in the other three inventories. When the taxpayer later took account of the three materials costs, the Government claimed there was a change in accounting method, but the court found that the taxpayer had merely corrected an error. In the instant case, petitioner's "mistakes" are much more egregious and of a different nature. In 1992, petitioner reported gross receipts from his business as a bail bondsman of $80,456, and increased the balances in his three accounts by a combined total of $90,727. In 1993, petitioner reported gross receipts from his business as a bail bondsman of $100,467 and increased the

balances in his three accounts by a combined total of $104,063. In other words, in each year the bonding fees that petitioner deferred reporting exceeded the amount reported. The instant case involves the systematic, consistent treatment of a significant item, not a posting or computational error. See sec. 1.446-1(e)(2)(ii)(b), Income Tax Regs. Petitioner's treatment of the deposits was not "error" within the meaning of this regulation.

Petitioner's Additional Arguments

Petitioner presents numerous additional arguments, none of which are persuasive. Petitioner directs his first argument to the Charleston County Court account only and argues that, because the receipt of fees and the subsequent deposit of moneys into the account were interrelated, the receipt of amounts deposited was of "no moment", and petitioner was not required to include it in income. Petitioner is wrong on the facts. Petitioner was required to maintain deposits with the Clerk of Court of Charleston County in the amount of 25 percent of outstanding bonds. He collected as a fee 10 percent (sometimes less) of each bond he wrote. There was no relationship between the deposits and the fees. There was no requirement that petitioner pay a percentage of the fees he collected into the Charleston County Court account, unlike the taxpayers in Sebring v. Commissioner, 93 T.C. 220 (1989), and Rankin v. Commissioner, T.C. Memo. 1996-

350, who paid a percentage of each fee into the BUF accounts. In the instant case, the amounts on deposit could come from anywhere. Thus, the receipts and deposits were not interrelated.

Petitioner's second argument is again directed only to the Charleston County Court account. Petitioner argues that the deposits with the Charleston County Court were held in trust and therefore were not income to him when received. Petitioner cites Angelus Funeral Home v. Commissioner, 47 T.C. 391 (1967), affd. 407 F.2d 210 (9th Cir. 1969), and Miele v. Commissioner, 72 T.C. 284 (1979).

In Angelus Funeral Home, the taxpayer, which computed its income on the accrual basis, operated a funeral home and collected "pre-need" deposits from clients; i.e., payments for future funeral services. The deposits were held in trust for the sole purpose of providing the funeral services, and the taxpayer was obligated to use the entire amount on deposit for that purpose. See Angelus Funeral Home v. Commissioner, supra at 392-393. The Court held that the amounts on deposit were held in trust for the client's benefit and were not income to the taxpayer until the funeral services were performed. See id. at 397.

In Miele, the taxpayer, which computed its income on the cash receipts and disbursements basis, was a law partnership that collected prepaid legal fees. The fees were maintained in a

separate account until actually earned (i.e., when the legal services were performed) and could not be used by the partnership while they were in the separate account.  See <u>Miele v. Commissioner</u>, <u>supra</u> at 285-286.  The Court held that the prepaid fees were not includable in income (being neither actually nor constructively received) until actually earned.  See <u>id.</u> at 290-291.

Petitioner's argument for the existence of a trust is that he is collecting and holding moneys in trust for the benefit of the Clerk of Court for Charleston County.  Petitioner points to the fact that the accounts or certificates of deposit were held in trust in the name of the Clerk of Court for Charleston County for the "sole protection and benefit of the holder of bail bonds."  However, the key question is whether petitioner acquired a beneficial interest in the funds at the time of their deposit. See <u>Johnson v. Commissioner</u>, 108 T.C. at 475.  He clearly did: The deposits would ultimately inure to his benefit.  First, petitioner chose whether funds from the Charleston County Court account, or some other funds, were used to pay any bond forfeiture owed to the County.  Second, even if payments were made from the account, they would be to petitioner's benefit, because they would satisfy an obligation of petitioner.  Finally, petitioner ultimately would receive the amounts remaining on deposit in the account.  On the other hand, in <u>Angelus Funeral</u>

Home and Miele, the beneficial interest in the funds on deposit was retained by the taxpayer's clients. Thus, these cases are distinguishable.

Petitioner directs his next argument to both the Charleston County Court account and the U.S. District Court account. He argues that section 461(f) applies, authorizing deductions for the amounts on deposit. Section 461(f) provides as follows:

> SEC. 461(f). Contested Liabilities.--If--
>
> > (1) the taxpayer contests an asserted liability,
> >
> > (2) the taxpayer transfers money or other property to provide for the satisfaction of the asserted liability,
> >
> > (3) the contest with respect to the asserted liability exists after the time of the transfer, and
> >
> > (4) but for the fact that the asserted liability is contested, a deduction would be allowed for the taxable year of the transfer (or for an earlier taxable year) determined after application of subsection (h),
>
> then the deduction shall be allowed for the taxable year of the transfer. This subsection shall not apply in respect of the deduction for income, war profits, and excess profits taxes imposed by the authority of any foreign country or possession of the United States.

The fundamental problem with petitioner's argument is that section 461(f) does not by itself create a deduction; it only affects timing. That is, it applies only to a deduction otherwise allowed. See sec. 461(f)(4). But here, because of

Stendig v. United States, 843 F.2d 163 (4th Cir. 1988), no deduction is allowed. Thus, section 461(f) does not apply.

Finally, petitioner argues that the fees he received from clients were excludable because there was a chance that the court would order the fee refunded to the client. There is some evidence in the record relating to petitioner's argument; namely, petitioner's testimony and the testimony of an employee at the Clerk of Court for Charleston County indicating that the judge in a case has discretion to order fees returned. On the other hand, there is no evidence in the record establishing the circumstances (including, for instance, the frequency) of returned fees. But there is a more basic defect with petitioner's argument; namely, exclusion of fees until resolution of any contingencies regarding their return was not the method of accounting that petitioner employed. Rather, the method he actually used was entirely different: under his method, he excluded all amounts deposited into the accounts, regardless of whether any fees so deposited were subject to return or not. Thus, this argument must fail.

We have considered petitioner's remaining arguments and find them to be without merit. We accordingly sustain respondent's determination that petitioner was required to include in income in 1992 the combined balances in the Charleston County, U.S.

District Court, and in-house accounts as of January 1, 1992;
namely, $555,909.[13]

To reflect the foregoing,

Decision will be entered

under Rule 155.

_____

[13] Because we sustain respondent's determination that the balance in the in-house account as of Jan. 1, 1992, must be included in 1992 gross income, we believe the possibility exists that certain amounts in the in-house account could be subject to double taxation, although the record is not entirely clear on this point.

It would appear to the Court that the possibility of double taxation exists because the balance in the in-house account decreased between Jan. 1 and Dec. 31, 1992. The record establishes that one possible disbursement from the in-house account was to fund required increases in the Charleston County Court or U.S. District Court account. The Charleston County Court account in fact increased between Jan. 1 and Dec. 31, 1992, and we have sustained respondent's determination that that increase must be included in petitioner's 1992 gross income. However, if any portion of the 1992 increase in the Charleston County Court account was funded with a disbursement from the in-house account, then the possibility appears to exist that this disbursement was taxed both as a part of the existing Jan. 1, 1992, balance in the in-house account and as an increase in the Charleston County Court account between Jan. 1 and Dec. 31, 1992.

We expect the parties to address this problem as part of their Rule 155 computations.