T.C. Memo. 2018-199

UNITED STATES TAX COURT

THRASYS, INC., ET AL.,[1] Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 11565-15, 28033-15,     Filed December 4, 2018.
28077-15, 28095-15,
28422-15, 28423-15,
28435-15.

<u>Evan R. Alonzo</u> and <u>David S. Howard</u>, for petitioners.

<u>Kevin G. Croke</u> and <u>Anthony J. Kim</u>, for respondent.

---

[1]Cases of the following petitioners are consolidated herewith: Mark A. Knapp, docket No. 28033-15; Randall P. Belknap and Lidia V. Belknap, docket No. 28077-15; Rosa H. Cardona Moreu and John Ruud, docket No. 28095-15; Rohit M. DeSouza and Isabel Campos, docket No. 28422-15; Ramesh Balakrishnan, docket No. 28423-15; and Aleksandar Totic and Ingrid E. Totic, docket No. 28435-15.

[*2]                          MEMORANDUM OPINION

LAUBER, <u>Judge</u>:  Currently before the Court is a motion by the Internal
Revenue Service (IRS or respondent) for summary judgment concerning the 2008
Federal income tax liability of Thrasys, Inc., petitioner in docket No. 11565-15
(Thrasys or petitioner).  During 2008 Thrasys received, but did not report, a $15
million payment from a customer.  It contends that this payment was an advance
payment, the taxation of which was properly deferred to 2009 under the deferral
method of accounting permitted by Rev. Proc. 2004-34, 2004-1 C.B. 991.
Respondent disputes that proposition.

For purposes of the instant motion, however, respondent urges a distinct
threshold argument--namely, that petitioner cannot avail itself of the deferral
method because adoption of that method would constitute an impermissible
change in its method of accounting.  <u>See</u> sec. 446(e) (requiring that a taxpayer
secure IRS consent before changing its accounting method).[2]  Finding that there
exist genuine disputes of material fact on this point, we will deny respondent's
motion for summary judgment.

---

[2]All statutory references are to the Internal Revenue Code in effect for the
relevant years, and all Rule references are to the Tax Court Rules of Practice and
Procedure.  We round all monetary amounts to the nearest dollar.

[*3]                                    Background

The following facts are derived from the parties' pleadings, motion papers, declarations, stipulations, and exhibits attached thereto.  They are stated solely for purposes of deciding respondent's motion for summary judgment and not as findings of fact in these cases.  Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994).  Thrasys had its principal place of business in California when it filed its petition.

Thrasys is a California business that was organized as a C corporation in 2002.  It remained a C corporation during 2008 but elected S corporation status effective January 1, 2009.  At all relevant times it has computed its taxable income on a calendar year basis using the accrual method of accounting.

Since 2002 Thrasys has engaged in the business of developing enterprise and custom software, creating and selling interests in software products, and selling software services.  Since its inception it has offered its products and services chiefly to companies in the healthcare industry.  In 2005 Thrasys commenced a successful relationship with Siemens Medical Solutions USA, Inc. (Siemens).  Siemens was one of petitioner's most important customers during 2005-2009.

Under a pair of contracts executed in 2005, Thrasys agreed to develop for Siemens a beta (test) version of a new software application to replace Medsuite, a

[*4] Siemens application that managed clinical, financial, and administrative functions for hospitals. Thrasys agreed that all software developed for Siemens under these agreements would become the exclusive property of Siemens. The parties executed several amendments to these agreements during 2006-2008.

At all relevant times, Ramesh Balakrishnan, petitioner in docket No. 28423-15, was Thrasys' majority shareholder and chief executive officer. He reviewed and signed Thrasys' Federal income tax returns. He submitted a declaration, signed under penalties of perjury, in which he described Thrasys' dealings with Siemens during 2005-2008. He attached to his declaration copies of the Forms 1120, U.S. Corporation Income Tax Return, that Thrasys filed for 2005-2007. (Copies of Thrasys' 2008-2010 returns are included in a stipulation of facts.)

Mr. Balakrishnan averred that he personally negotiated a series of contracts with Siemens during 2005-2008. By these contracts Thrasys granted Siemens rights to use and distribute software (with exclusivity in certain markets), deliver custom extensions of the software platform, and supply implementation services for specific customers. Pursuant to these contracts Siemens made payments to Thrasys, which Mr. Balakrishnan described as "advance payments," when each contract, amendment, or scope-of-work agreement was executed.

[*5]   Mr. Balakrishnan averred that Thrasys first received advance payments from Siemens, totaling $1,281,945, during 2005.  Thrasys did not include this amount in gross income on its 2005 Form 1120.  On Schedule L, Balance Sheets per Books, of its Form 1120 Thrasys included $1,281,945 on line 18(d) among its "other current liabilities" at yearend 2005.  A statement attached to line 18 shows at the beginning of 2005 "other current liabilities" of $989 (including zero "unearned revenue") and shows at the end of 2005 "other current liabilities" of $1,396,703 (including $1,281,945 of "unearned revenue").

For 2006 Mr. Balakrishnan averred that Thrasys included in gross income the $1,281,945 of advance payments it had received during 2005.  (Its 2006 Form 1120 shows gross receipts of $5,248,182.)  He averred that during 2006 Thrasys received advance payments from Siemens totaling $958,000, and it did not report this amount as gross income.  On Schedule L of its Form 1120 it included $958,000 as a "current liabilit[y]" on line 18(d).  A statement attached to line 18 shows at the beginning of 2006 "other current liabilities" of $1,396,703 (including $1,281,945 of "deferred revenue") and shows at the end of 2006 "other current liabilities" of $958,000 (consisting entirely of "deferred revenue").

For 2007 Mr. Balakrishnan averred that Thrasys neglected to include in gross income the $958,000 of advance payments it had received during 2006.  He

[*6] indicated that this was a mistake possibly "caused by a failure of communication between the company and the tax preparer." He averred that during 2007 Thrasys received advance payments from Siemens totaling $98,000 and did not report this amount as gross income. On Schedule L of its Form 1120 it included $98,000 on line 18(d) among its "other current liabilities" at yearend 2007. A statement attached to line 18 shows at the beginning of 2007 "other current liabilities" of $958,000 (consisting entirely of "deferred revenue") and shows at the end of 2007 "other current liabilities" of $1,176,356 (including $1,083,000 of "deferred revenue").

For 2008 Mr. Balakrishnan averred that Thrasys included in gross income the $1,083,000 of "deferred revenue" shown on its 2007 Schedule L. (Its 2008 Form 1120 shows gross receipts of $6,679,276.) He averred that Thrasys received from Siemens during 2008 an advance payment of $15 million, which it did not include in gross income. This payment is the subject of respondent's motion for summary judgment.

For book purposes Thrasys treated the $15 million payment received in 2008 differently from the payments it had received from Siemens in 2005-2007. It did so in accordance with the findings of an independent audit report of its 2008

[*7] financial statements. Note 2 of that report, captioned "Siemens Agreements," stated as follows:

> In October 2008, the Company entered into an Asset Acquisition Agreement with Siemens, pursuant to which the Company agreed to continue to provide * * * [software development and services] to Siemens personnel. The Company did not deliver the first version of the software as required under the terms of the agreement and, accordingly, considered itself in technical breach of the agreement at December 31, 2008. The $15,000,000 payment received under the agreement was considered to be potentially refundable due to this breach of contract and was recorded as a customer deposit liability as of December 31, 2008, along with $31,619 of interest earned during 2008 on the deposit.

Consistently with this audit report, Thrasys did not treat the $15 million payment as "deferred revenue" as it had done for the payments received during 2005-2007. Rather, on its 2008 Schedule L and the statements attached thereto it showed $15,031,618[3] as a yearend "deposit" among its "other assets" and that same amount as a "deposit obligation" among its "other liabilities." Its remaining advance payments continued to appear as "deferred revenue," declining from $1,083,000 at the beginning of 2008 to $534,188 at the end of that year.

For 2009 Thrasys filed Form 1120S, U.S. Income Tax Return for an S Cor-poration. It concluded that the risk of its having to refund the $15 million pay-

---

[3]The record does not explain the $1 discrepancy between the $31,618 of interest included in this figure and the $31,619 of interest that the independent auditor reported as having been received during 2008.

**[\*8]** ment to Siemens had been eliminated during 2009. On Schedule L and the accompanying statement of its Form 1120S, it accordingly moved the $15 million from the "deposit" category into the "deferred revenue" category. The statement attached to its Schedule L shows that "deposits" decreased from $15,050,992 at the beginning of 2009 to $39,374 at the end of 2009 and that "deferred revenues" increased from $534,188 at the beginning of 2009 to $15,370,553 at the end of that year.

For 2010 Thrasys treated the $15 million payment received from Siemens in 2008 as long-term capital gain that was recognized in 2010. On a statement attached to Schedule L of its Form 1120S for 2010, it showed that its "deferred revenues," which stood at $15,370,553 at the beginning of 2010, had declined to zero at the end of that year. Thrasys attached to its 2010 return Form 8275, Disclosure Statement, on which it stated as follows:

> The Taxpayer reported the $15,000,000 as an obligation to Siemens on its applicable financial statement for 2008. The Taxpayer reported the $15,000,000 as deferred revenue on its applicable financial statement for 2009. Finally, on December 16, 2010, the Taxpayer completed delivery of the * * * [software], whereupon the Taxpayer reported the $15,000,000 as income on its financial statement for 2010. The Taxpayer hereby reports the same as gross income in 2010 under the deferral method of Revenue Procedure 2004-34.

**[\*9]**  On July 30, 2012, after the IRS had commenced its examination of Thrasys'
returns, Thrasys submitted amended returns for 2008, 2009, and 2010.  On its
amended Form 1120S for 2009 Thrasys reported the $15 million payment as long-
term capital gain recognized for 2009.  The IRS did not accept any of these
amended returns insofar as they concerned the tax treatment of the $15 million
payment.

On February 4, 2015, the IRS issued Thrasys a notice of deficiency for 2008
determining that the $15 million payment should have been reported as income for
2008, the year in which it was received.[4]  Thrasys timely petitioned this Court for
redetermination of the deficiency, urging as alternative positions that the payment
was (1) properly treated as a deposit for 2008 and includible in income for 2010 or
(2) an advance payment received in 2008 that was eligible for deferral to 2009
under Rev. Proc. 2004-34, supra.  The parties filed a stipulation of settled issues in
which Thrasys conceded the first argument.  The remaining unresolved issue for
Thrasys' 2008 tax year is whether it may properly account for the $15 million
payment under the deferral method permitted by Rev. Proc. 2004-34, supra.

---

[4]The IRS simultaneously issued Thrasys a notice of deficiency for 2009
determining that, if the $15 million payment was properly deferred to 2009, after
Thrasys converted to S status, then the $15 million was subject to tax under sec-
tion 1374(b)(1) as a "net recognized built-in gain."  We express no view on that
question, which is not currently before us.

**[\*10]** On June 20, 2018, respondent filed a motion for summary judgment, to which petitioner timely responded. Without conceding that the $15 million payment is properly characterized as an advance payment, respondent contends that petitioner cannot avail itself of the deferral method because that would constitute an impermissible change in its method of accounting. In respondent's view petitioner adopted the "deposit" method of accounting for payments of this sort, and it is precluded from switching to the deferral method because it did not receive the Commissioner's consent to such change. See sec. 446(e).

Discussion

A.    Summary Judgment Standard

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). The Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(b); Sundstrand Corp., 98 T.C. at 520. In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party (here, petitioner). Sundstrand Corp., 98 T.C. at 520. However, the nonmoving party may not rest upon mere allegations or denials of his pleadings but instead must set forth specific facts

[*11] showing that there is a genuine dispute for trial.  Rule 121(d); see

Sundstrand Corp., 98 T.C. at 520.

B.      Governing Legal Principles

Section 446(a) provides that "[t]axable income shall be computed under the

method of accounting on the basis of which the taxpayer regularly computes his

income in keeping his books."  "The term 'method of accounting' includes not

only the overall method of accounting * * * but also the accounting treatment of

any item."  Sec. 1.446-1(a)(1), Income Tax Regs.

A taxpayer generally "may adopt any permissible method of accounting"

when filing his first return.  Id. para. (e)(1); see Pac. Nat'l Co. v. Welch, 304 U.S.

191, 194 (1938).  But a taxpayer who "changes the method of accounting on the

basis of which he regularly computes his income in keeping his books shall, before

computing his taxable income under the new method, secure the consent of the

Secretary."  Sec. 446(e); see Silver Queen Motel v. Commissioner, 55 T.C. 1101,

1105 (1971) ("[T]he notion of changes in accounting method necessarily implies

that a new accounting method is being substituted for a previously regularly used

accounting method.").

"A change in the method of accounting includes a change in the overall plan

of accounting for gross income or deductions or a change in the treatment of any

**[*12]** material item." Sec. 1.446-1(e)(2)(ii)(<u>a</u>), Income Tax Regs. A material item is "any item that involves the proper time for the inclusion of the item in income or the taking of a deduction." <u>Ibid.</u>; see <u>Primo Pants Co. v. Commissioner</u>, 78 T.C. 705, 722 (1982) (noting that materiality "turns on whether the items affect timing").

An accounting treatment constitutes a "method of accounting" if the taxpayer "regularly computes his income" using it. Sec. 446(a), (e). Thus, the treatment of an item generally results in the adoption of an accounting method only if there exists "a pattern of consistent treatment." Sec. 1.446-1(e)(2)(ii)(a), Income Tax Regs. This rule may apply "even if that treatment is erroneous or an incorrect application of a chosen method." <u>Capital One Fin. Corp. v. Commissioner</u>, 659 F.3d 316, 326 (4th Cir. 2011), <u>aff'g</u> 133 T.C. 136 (2009) <u>and</u> 130 T.C. 147 (2008).

The Commissioner has ruled that "[t]he treatment of a material item in the same way in determining the gross income or deductions in two or more consecutively filed tax returns represents consistent treatment of that item." Rev. Rul. 90-38, 1990-1 C.B. 57, 58; <u>see</u> Rev. Proc. 97-27, sec. 2.01(2), 1997-1 C.B. 680, 681 (noting that the two-year rule applies "without regard to any change in status of the method as permissible or impermissible"), <u>superseded by</u> Rev. Proc. 2015-13, 2015-5 I.R.B. 419. This Court and other courts have generally agreed

**[\*13]** that an erroneous treatment rises to the level of a "method of accounting" only if it is employed consistently for two or more years. See Johnson v. Commissioner, 108 T.C. 448, 494 (1997) (ruling that a change in accounting method occurs "[i]f the change affects the amount of taxable income for 2 or more taxable years"), aff'd in part, rev'd in part on other grounds, 184 F.3d 786 (8th Cir. 1999); Greiner v. United States, 122 Fed. Cl. 139, 149 (2015) (stating that an erroneous treatment constitutes the adoption of an accounting method only if it appears "on at least two consecutive tax returns"), aff'd, 651 F. App'x 1000 (Fed. Cir. 2016). "[A] short-lived deviation from an already established method of accounting need not be viewed as establishing a new method of accounting." Huffman v. Commissioner, 126 T.C. 322, 354 (2006), aff'd, 518 F.3d 357 (6th Cir. 2008).[5]

"A change in method of accounting does not include correction of mathematical or posting errors, or errors in the computation of tax liability." Sec.

---

[5]A taxpayer may not be bound to an accounting treatment if, in good faith, he treats an item incorrectly on a single return. See Mamula v. Commissioner, 346 F.2d 1016, 1019 (9th Cir. 1965) (allowing a taxpayer to elect the installment method after he had employed an improper method on one return), rev'g and remanding 41 T.C. 572 (1964). But see Huffman v. Commissioner, 518 F.3d 357, 368 (6th Cir. 2008) (concluding that the taxpayer's "inadvertence or intent" is not "relevant to the inquiry of whether a change in accounting method has occurred"), aff'g 126 T.C. 322 (2006); Consol. Mfg., Inc. v. Commissioner, 249 F.3d 1231, 1238 (10th Cir. 2001) (distinguishing Mamula where the taxpayer "used the impermissible method for more than a decade before being caught"), aff'g in part, rev'g in part 111 T.C. 1 (1998).

**[\*14]** 1.446-1(e)(2)(ii)(b), Income Tax Regs.  "The line between a change in accounting method and mere error (or its correction) is a fine one."  Hawse v. Commissioner, T.C. Memo. 2015-99, 109 T.C.M. (CCH) 1511, 1518.  In discerning that line courts have "emphasized the primacy of consistency and timing in establishing a method of accounting."  Huffman, 126 T.C. at 350 n.16 (citing Diebold, Inc. v. United States, 16 Cl. Ct. 193, 204 n.9 (1989), aff'd, 891 F.2d 1579 (Fed. Cir. 1989)); see Firetag v. Commissioner, T.C. Memo. 1999-355, 78 T.C.M. (CCH) 645, 651 (finding a change of accounting method where the "case involve[d] the systematic, consistent treatment of a significant item"), aff'd, 232 F.3d 887 (4th Cir. 2000).  "A change in the method of accounting also does not include a change in treatment resulting from a change in underlying facts."  Sec. 1.446-1(e)(2)(ii)(b), Income Tax Regs.

C.    Analysis

According to Mr. Balakrishnan, Thrasys since 2005 has used a single method of accounting for the receipt of advance payments in connection with its customer contracts, namely, "the method of accounting for such payments as provided in Rev. Proc. 2004-34."  That revenue procedure allows taxpayers to choose from two permissible methods of accounting for deferred (i.e., unearned) revenues arising from (among other things) "the sale, lease, or license of computer software."

[*15] Rev. Proc. 2004-34, sec. 4.01(3)(e), 2004-1 C.B. at 992. A taxpayer may elect the full inclusion method, which requires that advance payments be fully included in gross income in the year of receipt. Id. sec. 5.01, 2004-1 C.B. at 992. Alternatively, the taxpayer may elect the (usually more desirable) deferral method, which generally allows recognition of advance payments to be deferred for one year for Federal income tax purposes unless those payments, appropriately accounted for, are currently "recognized in revenues in * * * [the taxpayer's] applicable financial statement." Id. sec. 5.02(3)(a)(i), 2004-1 C.B. at 993.

Entries appearing on petitioner's 2005-2008 tax returns and financial statements provide evidence to support Mr. Balakrishnan's averment that Thrasys elected the deferral method in 2005 or previously. With the exception of the $15 million payment received in 2008, Thrasys appears to have treated all advance payments on its financial statements as "deferred revenues" or "unearned revenues."[6] As the deferral method directs, petitioner generally appears to have deferred recognition of these unearned revenues, for Federal income tax purposes, until the year following the year of receipt.

---

[6]The terms "deferred revenue" and "unearned revenue" are generally interchangeable for financial accounting purposes. See Jay Alix et al., Financial Handbook for Bankruptcy Professionals, sec. 10.2 (2d ed. 1996); John Downes & Jordan Elliot Goodman, Dictionary of Finance and Investment Terms 630 (4th ed. 1995).

**[\*16]** Petitioner agrees that its accounting deviated from the deferral method on at least one occasion. The deferral method prohibits the deferral of revenues beyond the next full taxable year after the year of receipt. Id. sec. 5.02(1)(a)(ii), (2), 2004-1 C.B. at 992-993. In 2007 Thrasys neglected to include in gross income the $958,000 of advance payments it had received during 2006, and it thus deferred that $958,000 for two years rather than one. Mr. Balakrishnan described this mistake as a one-time error. If so, the erroneous treatment would appear to lack the consistency necessary to constitute a method of accounting. See sec. 446(e); Huffman, 126 T.C. at 354 ("[A] short-lived deviation from an already established method of accounting need not be viewed as establishing a new method of accounting."); Silver Queen Motel, 55 T.C. at 1105.

Respondent contends that Thrasys incorrectly adopted and applied a "deposit" method of accounting for the $15 million payment it received in 2008. Cf. Gas Light Co. of Columbus v. Commissioner, T.C. Memo. 1986-118, 51 T.C.M. (CCH) 685, 693 (finding that the taxpayer had changed its accounting method by abandoning the practice of reporting prepayments as nontaxable security deposits); City Gas Co. of Fla. v. Commissioner, T.C. Memo. 1984-44, 47 T.C.M. (CCH) 971, 980 (same). For at least two reasons we believe that there exist genuine disputes of material fact concerning the correctness of respondent's submission.

[*17] First, as far as the record reveals, Thrasys treated only one customer payment--the $15 million payment it received from Siemens in 2008--as a "deposit" for book or Federal income tax purposes. That treatment appeared on only one tax return, namely, petitioner's Form 1120 for 2008. (On its Form 1120S for 2009 Thrasys shifted the $15 million from the "deposit" category into the "deferred revenue" category.) A question of material fact exists as to whether petitioner's "deposit" treatment displayed the consistency required to constitute a method of accounting on the basis of which Thrasys "regularly compute[d]" its income. See sec. 446(a), (e).

Second, a change in method of accounting does not include "a change in treatment resulting from a change in underlying facts." Sec. 1.446-1(e)(2)(ii)(b), Income Tax Regs. Thrasys treated the $15 million payment differently from the customer payments it had received during 2005-2007, and it did so in accordance with adjustments that an independent auditor had made to its 2008 financial statement. Because Thrasys at yearend 2008 was in technical breach of its software development contract(s) with Siemens, the auditor believed that the $15 million payment might have to be refunded and thus should be reflected on Thrasys' financial statement as a customer "deposit" offset with a "deposit obligation."

**[\*18]** Thrasys now seems to agree that this treatment was mistaken (for Federal income tax purposes anyway) and that the $15 million payment should have been treated as an advance payment in 2008 under the principles of Rev. Proc. 2004-34, supra.[7] But Thrasys and its auditor may reasonably have believed that treating the $15 million payment as a deposit was a required "change in treatment resulting from a change in underlying facts." Sec. 1.446-1(e)(2)(ii)(b), Income Tax Regs.; cf. Commissioner v. Indianapolis Power & Light Co., 493 U.S. 203, 210 (1990) (describing "[t]he key" to distinguishing an advance payment from a deposit as "whether the taxpayer has some guarantee that he will be allowed to keep the money").

In sum, viewing all facts and inferences from the facts in the light most favorable to petitioner as the nonmoving party, we find that there exist genuine disputes of material fact as to whether Thrasys in 2008 adopted the "deposit" method as a method of accounting for customer payments. We will accordingly deny respondent's motion for summary judgment.[8]

---

[7]See Rev. Proc. 2004-34, sec. 5.02(3)(b), 2004-1 C.B. 991, 993 ("The determination of whether an amount is earned in a taxable year must be made without regard to whether the taxpayer may be required to refund the advance payment upon the occurrence of a condition subsequent.")

[8]Respondent alternatively contends that summary judgment in his favor

(continued...)

**[\*19]** To reflect the foregoing,

<u>An appropriate order will be issued</u>.

---

[8](...continued)
would be appropriate if we granted his motion for sanctions filed on April 3, 2017. In that motion respondent contended that petitioner's failure to respond appropriately to his discovery requests justified striking Thrasys' "advance payment" position. We denied respondent's motion on October 16, 2018.